No. 88-490

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

JOHN A. BROERS,

        Petitioner and Appellant,

   -vs-

MONTANA DEPARTMENT OF REVENUE and its
LIQUOR DIVISION,

        Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,
            In and for the County of Flathead,
            The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hash, O'Brien & Bartlett; James C. Bartlett argued,
        Kalispell, Montana

    For Respondent:

        Eric J. Fehlig argued, Dept. of Revenue, Legal Affairs,
        Helena, Montana

Submitted: March 30, 1989

Decided: May 11, 1989

Filed: '89 MAR 12 AM 8 34

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The Department of Revenue denied renewal of appellant's all-beverages liquor license. Appellant challenges the sufficiency of the evidence and the constitutionality of the statutes upon which the renewal was denied. We affirm.

John Broers (Broers) was the owner of Stanton Creek Lodge & Outfitters, near Essex, Montana. In June, 1986, Broers applied with the Department of Revenue (Department) for a renewal of the all-beverages liquor license. On September 19, 1986, the Department denied the renewal because Broers had not demonstrated he was likely to operate his establishment in compliance with applicable state and local laws. Broers sought administrative review before the Department, and judicial review before the District Court of the Eleventh Judicial District, Flathead County, Montana. At each stage, the denial was affirmed.

Broers raises the following issues for review:

1. Are the statutory provisions upon which the license was denied unconstitutionally vague and overbroad?

2. Must the Department limit its examination to violations of the Montana Alcoholic Beverage Code, zoning and nuisance laws when considering applications for liquor licenses?

3. Was there sufficient evidence to deny Broers' application for a license renewal?

Broers was granted an all-beverages liquor license for his Stanton Creek Lodge each year since 1975. The five years which preceded the denial of the liquor license were punctuated by instances of criminal conduct by Broers. These instances, all of which resulted in misdemeanor convictions, included DUI, outfitting without a federal license, disorderly conduct, reckless driving, criminal mischief, and

2

assault.   Of greatest importance to this case were two incidents which directly involved the liquor establishment.

In August, 1985, Herb Strong, his wife and three children stopped at Broers' Lodge because his two boys had to use the restroom.   Soon after the boys entered the Lodge, they emerged very upset because Broers had confronted them about making a purchase in order to use his restroom.   As Mr. Strong had his children get back into their vehicle, Broers called for Mr. Strong to come to him.   Strong retorted using a two-word expletive, climbed into his vehicle and began to drive away.

As Stongs' vehicle left the Lodge parking lot, Mrs. Strong saw Broers pointing a rifle at them from the doorway of the Lodge.   Mrs. Strong had her children duck from view as Mr. Strong drove them from the area.

Broers followed the Strongs in his pickup and confronted them a short distance away where the Strongs were stopping to tie down gear on their fishing boat.   Broers asked Mr. Strong whether the boys owed him something for using the restroom.   Strong stated that they did not, backed up his vehicle and proceeded down the road.

Again Broers followed.   Although it is not exactly clear what happened next, the two vehicles collided when Broers was passing the Strong vehicle.   Neither vehicle stopped.   Broers drove ahead to a farmhouse to call the sheriff.   Strong notified the sheriff in Kalispell.   Broers was convicted on four counts of misdemeanor assault.

In another incident at the Lodge, on January 1, 1986, Broers plowed the snow from the Lodge parking lot onto U.S. Highway 2 during a heavy snowfall.   The resulting large snow berm caused a two car collision and Broers was convicted of misdemeanor criminal mischief.

3

The Department informed Broers by letter dated September 19, 1986 that his application for renewal was denied. Broers requested administrative review and on December 17, 1986 and January 23, 1987, a hearing was held before an examiner from Agency Legal Services Bureau. The hearings examiner concluded Broers had failed to demonstrate he would operate his establishment in accordance with Montana law. Exceptions and legal arguments were made to the Director of the Department of Revenue. The Director adopted the findings of the hearings examiner and ordered the denial be the final decision of the Department.

The matter was appealed to the District Court. The Department's decision was affirmed by District Judge Michael Keedy.

Issue No. 1

Are the statutory provisions upon which the license was denied unconstitutionally vague and overbroad?

We begin by noting that under the Twenty-first Amendment to the United States Constitution, states are granted extensive regulatory power of the liquor industry. California v. LaRue (1972), 409 U.S. 109, 115, 93 S.Ct. 390, 395, 34 L.Ed.2d 342, 350. The Montana Alcoholic Beverage Code is an exercise of our State's police power and as such should be interpreted to further its declared policy: to protect the welfare, health, peace, morals and safety of the people of Montana. Section 16-1-101(3), MCA.

The statute at issue here, § 16-4-401, MCA, formed the basis upon which the Department denied Broers' renewal of his liquor license. That statute reads in part:

> (2) Except as provided in subsection
> (6), in the case of a license that
> permits on-premises consumption, the
> department must find in every case in
> which it makes an order for issuance of a

4

new license [or renewal of a license, 42.12.121(2), ARM]. . . . :

     (a) in the case of an individual applicant:

. . .

     (iv) the applicant's past record and present status as a purveyor of alcoholic beverages and as a businessman and citizen demonstrate that he is likely to operate his establishment in compliance with all applicable laws of the state and local governments; . . .

It is Broers' contention this section is unconstitutionally vague because it does not describe prohibited conduct sufficiently to give a person of ordinary intelligence fair notice. Additionally, Broers claims the statute impermissibly gives unbridled discretion to the Department to grant or deny licenses upon any facts it wishes to accept. We disagree.


## VAGUENESS

Broers argues the statute is unconstitutionally vague because it does not specifically declare what past record and present status is to be considered by the Department. Similarly, Broers argues the statute does not inform an applicant or licensee that violations of Montana's criminal code can result in a denial.

The United States Supreme Court has held that noncriminal statutes are unconstitutionally vague if persons of common intelligence must necessarily guess at their meaning. Broadrick v. Oklahoma (1973), 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830, 837; Keyishian v. Board of Regents (1967), 385 U.S. 589, 604, 87 S.Ct. 675, 684, 17 L.Ed.2d 629, 641. However, an unreasonable interpretation and dissection of a statute will not render it void for

5

vagueness. It is the duty of the courts to uphold the constitutionality of a statute if such can be accomplished by reasonable construction. North Central Services, Inc. v. Hafdahl (Mont. 1981), 625 P.2d 56, 58, 38 St.Rep. 372, 374.

Undoubtedly the legislature has granted substantial discretion to the Department of Revenue to investigate applicants and grant or deny licenses. Still, the statute is not without standards. As the District Court of Appeals of Florida noted in a challenge to statutes which limit the issuance of a beverage license to "persons of good moral character":

> ". . . We doubt that the legislature could in its infinite wisdom detail each salient standard for good moral character. What constitutes good moral character is a matter to be developed by facts, evaluated by the agency, with a judicial review of same ever available. The subject statute is constitutional . . ."

Zemour, Inc. v. State Division of Beverage (Fla.App. 1977), 347 So.2d 1102, 1103, citing White v. Beary (Fla.App. 1970), 237 So.2d 263, 265-66.

The discretion granted to the Department is not without limit. The "past record and present status" is clearly limited and defined within the remainder of the statute. The scope of the Department's investigation is limited to a person's past record and present status "as a purveyor of alcoholic beverages" and as a businessman and citizen which demonstrates <u>likely operation of the liquor establishment</u> in compliance with all applicable laws of the state and local governments.

A person's past record or present status as an income tax protestor, or, as argued at bar, a trespasser at Malmstrom Air Force Base bears no relation to the operation of a liquor establishment. A denial on those grounds would

6

constitute an abuse of the Department's discretion and would not survive judicial review.

Additionally, Broers argues the phrase "all applicable laws of the state and local governments" is vague because it does not adequately inform a person which laws he or she may disobey before a liquor license will be denied. We disagree. The statue is capable of reasonable interpretation and construction. As stated in 1 Am.Jur.2d, Administrative Law § 38:

> While the words of a statute are the basic data from which to draw its meaning, not every problem of statutory construction should be solved simply by a literal reading of the language. Particular language may and should be construed in the light of the purposes of the legislation, especially a declared purpose and policy. The meaning of a particular word may be determined by the purposes of the legislation; for a word may take color from its surroundings and derive meaning from the context of the statute, which must be read in the light of the mischief to be corrected and the end to be attained.

There is no question but that Montana's Alcoholic Beverage Code has a definite and substantial public policy goal. That public policy is clearly stated in § 16-1-101(3), MCA:

> This code is an exercise of the police power of the state, in and for the protection of the welfare, health, peace, morals, and safety of the people of the state, _and_ _its_ _provisions_ _shall_ _be_ _construed_ _for_ _the_ _accomplishment_ _of_ _such_ _purposes_. (Emphasis added.)

The meaning of the statute's "all applicable laws" language is obvious. All applicable laws are those which are designed to protect the welfare, health, peace, morals, and safety of the citizens of this State as they relate to the

manufacture, sale, and distribution of alcoholic beverages within the State of Montana. Neither income tax protestation nor advocation of nuclear disarmament bear any relation to the manufacture, sale, or distribution of alcoholic beverages. However, assault with a firearm upon a family who innocently stops to use a restroom in a liquor establishment licensed by the State definitely falls within the logical nexus of laws designed to protect our citizens where the sale and distribution of alcoholic beverages are concerned. The statute is set out in terms the ordinary person exercising ordinary common sense can understand and comply with, and therefore, is not unconstitutionally vague.

## OVERBREADTH

Broers contends the statute is unconstitutionally overbroad because a liquor license could be denied to one who "is not popular with the general public" and could curtail the right of free speech and association. Broers' overbreadth argument spills over to his contention that the statute is vague. Therefore, in light of our conclusion regarding the vagueness challenge, we will only briefly examine this issue.

Recently, the United States Supreme Court has held that statutes should be construed narrowly, where possible, to bring them in line with constitutional requirements of due process.

> It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, If it be "readily susceptible" to a narrowing construction that would make it constitutional, it will be upheld. Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

8

Virginia v. American Booksellers Assn., Inc. (1988), 484 U.S. 383, 108 S.Ct. 636, 644-45, 98 L.Ed.2d 782, 796. Additionally, the Supreme Court stated in City of Houston v. Hill (1987), 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398, 410:

> Only a statute that is substantially overbroad may be invalidated on its face. New York v. Ferber (1982), 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113; Broadrick v. Oklahoma, supra. "We have never held that a statute should be held invalid on its face merely because it is possible to conceive of a single impermissible application . . . " Id., at 630, 93 S.Ct. 2908, 37 L.Ed.2d 830.

See also, Members of City Council of City of Los Angeles v. Taxpayers for Vincent (1984), 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772. We conclude our interpretation and construction of § 16-4-401(2)(a)(iv) adequately protects First Amendment rights. Broers' overbreadth and vagueness challenges must fail.


Issue No. 2

Must the Department limit its examination to violations of the Montana Alcoholic Beverage Code, zoning and nuisance laws when considering applications for liquor licenses?

Broers erroneously believes the phrase "all applicable laws of the state and local governments" does not extend beyond the specific provisions of the Alcoholic Beverage Code and the zoning and nuisance laws. Laws under the Alcoholic Beverage Code include prohibitions against the sale of alcohol to intoxicated person and persons under the age of 21, and the sale of alcohol not purchased from the State liquor store. However, a renewal of a liquor license is granted under the same criteria as a new license. Under Broers' interpretation, such limitation would have no

practical application to first-time applicants since the Department would have no prior history on which to base its decision. More importantly, this narrow reading of the statute would unreasonably limit the Department's investigative ability and restrict its power to grant licenses to qualified applicants. The very purpose of the Code, to secure the welfare, health, peace, morals and safety of the people of Montana would be lost.

Issue No. 3

Was there sufficient evidence to deny Broers' application for a license renewal?

The standard of review of agency decisions is whether the findings of fact are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Section 2-4-704(2), MCA. We conclude the findings of the hearings examiner are not clearly erroneous and are based upon reliable, probative and substantial evidence on the whole record.

The Department did consider Broers' criminal acts which did not have a direct connection with the operation of the Stanton Creek Lodge. These acts included misdemeanor convictions for DUI, reckless driving, barroom brawling, and discharging a firearm in the direction of a passing motorist. These incidents alone may not have been sufficient to deny the license renewal. However, viewed as a whole, Broers' actions indicated to the Department that he had a disregard for the safety of others, a violent temperament and a tendency toward alcohol abuse. When viewed in connection with the Strong family and snowplowing incidents, there was ample evidence to support the Department's conclusion that Broers' license renewal must be denied.

As noted earlier, a license renewal is granted under the same criteria as any new license. Broers' license was not revoked or suspended. Section 16-4-401(1), MCA, clearly states that a "license under this code is a privilege which the state may grant to an applicant and is not a right to which any applicant is entitled." The Alcoholic Beverage Code also provides grounds upon which a license may be denied. Under § 16-4-405(3), MCA, a license may not "be issued if the department finds from the evidence . . . that the purposes of this code will not be carried out by the issuance of such license." After its investigation, the Department concluded the purposes of the Code, to protect the welfare, health, peace, morals and safety of Montana's citizens, would not be carried out by a renewal of Broers' liquor license.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
Justices

11

Mr. Justice William E. Hunt, Sr., dissenting:

I dissent.  The statute is overbroad and I believe the legislature has gone too far in delegating its responsibility and authority to the Department of Revenue.

The purpose of the Department of Revenue is to raise revenues and not to establish or enforce the moral standards of businessmen or anyone else.

_____
                                Justice


I concur in the foregoing dissent of Justice Hunt.

_____
                                Justice