No. 01-694

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 23

MONTANA MEDIA, INC.,

       Petitioner and Appellant,

  v.

FLATHEAD COUNTY, CITY OF WHITEFISH,

       Respondents and Respondents.

FILED

FEB 13 2003

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead, Cause No. DV-00-267B,
                The Honorable Stewart E. Stadler, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Alisa Labut Wright, Roetzel & Andress, Akron, Ohio

              Chad M. Wold, Wold Law Firm, P.C. Kalispell, Montana

       For Respondent City of Whitefish:

              John M. Phelps, Hedman, Hileman & Lacosta, Whitefish, Montana

       For Respondent Flathead County:

              Jonathon B. Smith, Office of the Flathead County Attorney, Kalispell, Montana

                     Submitted on Briefs:  August 8, 2002

                              Decided: February 13, 2003

Filed:

_____
                 Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Appellant, Montana Media, Inc., filed a complaint for declaratory judgement in the District Court for the Eleventh Judicial District in Flathead County, and requested that the District Court declare that the City of Whitefish and Flathead County zoning regulations, which regulate off-premise signs and billboards, violated Montana's Outdoor Advertising Act and the Montana and United States Constitutions. The City and the County filed counterclaims for injunctive relief which sought to enforce their zoning regulations. The District Court denied Montana Media's petition for declaratory relief against the City, and permanently enjoined Montana Media from operating its signs that violated the City ordinance. The District Court denied Montana Media's petition for declaratory relief against the County in part and postponed action on the County's motion for injunctive relief until issues of fact underlying Montana Media's equal protection allegations could be resolved. Montana Media appeals the District Court's denial of its declaratory judgment action and the issuance of the permanent injunction. We affirm the judgment and injunction of the District Court.

¶2 We restate the issues on appeal as follows:

¶3 1. Did the District Court err when it concluded that the City and County ordinances do not impose an unconstitutional restriction on commercial speech?

¶4 2. Did the District Court err when it concluded that the City and County ordinances do not create an unconstitutional prior restraint on commercial speech?

2

¶5     3. Did the District Court err when it concluded that the City and County ordinances are not unconstitutionally vague?

¶6     4. Did the District Court err when it concluded that the City and County ordinances do not violate the procedural due process clause?

¶7     5. Did the District Court err when it concluded that the City ordinance does not violate Montana Media's right to equal protection?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8     Montana Media, Inc. (Montana Media), is a marketing company, located in Flathead County, that offers billboard space to those businesses that wish to advertise a service or product available at another location.[1] Montana Media owns and operates a number of billboards which are located within the jurisdictions of Flathead County and the City of Whitefish. Two of Montana Media's billboards are subject to regulation pursuant to the Whitefish Zoning Jurisdiction Regulation (WZJR) sign ordinance which was adopted in 1990. The other billboards owned by Montana Media that are located within the County are subject to regulation pursuant to the Flathead County Zoning Regulation (FCZR) sign ordinance.

¶9     The City ordinance provides:

---

[1] Sign and billboards are distinguished in County ordinances depending on whether they are designed for frequent change of copy. A billboard has a surface upon which temporary messages are displayed, whereas a sign is not designed for frequent copy changes. FCZR § 7.18.060. The City ordinance does not differentiate between billboards and off-premise signs. WZJR § 17.120.120.

3

The regulation of signs involves concern both of aesthetics and visual communication. Some signs give necessary and useful information to those who use the public rights-of-way. Others serve no useful public purpose, may even be safety hazards, and create unnecessary visual discord. The emphasis of these regulations shall be to strike a balance between the needs of the business to identify their places of business, products and services offered, and the aesthetic needs of the community as a whole.

WZJR § 17.100.010.

¶10 Signs are defined as:

Any device, structure, fixture, or placard using graphics, symbols, pictures, emblems, lighting schemes and/or written copy, or any other medium for visual communication, including its supporting structure and source of light, which is intended to be used to attract attention to a location or subject matter, for advertising, instruction, or information purposes, and is viewable from a public right–of–way.

WZJR § 17.120.040.

¶11 Noncommercial signs are permitted throughout the city subject to size, density and placement restrictions. Signs that advertise a place of business found at that location - onsite signs - are permitted subject to size restrictions. The City ordinance provides that an off-premise sign is a "sign structure advertising an establishment, merchandise, service, or entertainment, which is not sold, produced, manufactured, or furnished at the property on which the sign is located." WZJR § 17.120.340. Off-premise signs within the City are only permitted in commercial and industrial zones, are subject to size and setback restrictions, and require a permit under certain circumstances. WZJR §§ 17.100.060(7), 17.100.090, 17.100.100. The ordinance strictly prohibits off-premise signs, other than directional signs,

4

in residential zones. Permits are required when a new sign is erected, or when the copy, design, illumination or size of an existing sign is changed. WZJR § 17.100.100(1).

¶12 A grandfather clause required that non-conforming signs which were erected before 1990, be brought into compliance with the City ordinance as soon as any of the following events occurred: 1) the sign was relocated or replaced; 2) the structure or size of the sign was altered; 3) the sign was damaged or taken out of service; or 4) by September 30, 1996, for off-premise signs located in the public right-of-way. WZJR § 17.100.100(2)(b).

¶13 Montana Media owns two off-premise signs, or billboards, that are subject to the City ordinance. Montana Media purchased billboard 03696, which is located on the west side of Highway 93 South, on July 9, 1999. When billboard 03696 was purchased by Montana Media it had no signage or lighting fixtures. In July of 1999, an apron, new copy and two advertising faces were installed. In December of 1999, new lighting fixtures were installed without a permit. Billboard 03696 violates the ordinance size and setback restrictions. Montana Media purchased billboard 05897, which is located on the east side of Highway 93 South, on September 13, 2000. Later, Montana Media installed an apron, a new advertising face and new lighting fixtures without a permit. Billboard 05897 also violates the ordinance size and setback restrictions.

¶14 On May 2, 2000, the City informed Montana Media that billboard 03696 violated ordinance size restrictions, public right-of-way setback restrictions, neighboring lot setback restriction, and was modified without a permit. The City explained that because there was

5

no feasible manner to bring the billboard into compliance, it would have to be removed. It is undisputed that both billboards violate the City ordinance.

¶15 The County adopted a sign ordinance as part of the Flathead County Zoning Regulations in 1993. The County defines a sign as "[a]ny medium or visual communication including its supporting structure and source of light which is used or intended to be used to attract attention to a location or subject matter for advertising, instruction, or informational purposes." FCZR § 7.18.060. The County ordinance defines and regulates billboards and offsite signs differently.

¶16 The County ordinance provides two definitions for billboards. First, a billboard is defined as:

> [A] standard outdoor advertising sign larger than 250 square feet or [sic] total structural surface area which is designed to convey a message or to advertise products services or businesses not located on the premises on which the sign is located. A sign shall not be considered a billboard unless it is built with a surface on which poster panels or painted bulletins are mounted for the purpose of conveying visual messages or advertisements.

FCZR § 7.03.030.

¶17 The second definition of billboard provides:

> Billboard/painted bulletin sign means a standard outdoor advertising sign which is designed to advertise products, services or businesses not located on the premises on which the sign is located. A sign shall not be considered a billboard unless the sign is designed with a surface on which temporary poster panels or painted bulletins are mounted for the purpose of conveying a visual advertising message.

FCZR § 7.18.060(2).

6

¶18    The different definitions of the term billboard have significant legal implications in reviewing the ordinance for constitutional validity. Billboards are only permitted in specific zones within the county. Any proposed construction, reconstruction, replacement or major alteration of a billboard conducted subsequent to the enactment of the ordinance requires the issuance of a conformance permit prior to commencement. FCZR § 5.11.030(10). All signs must be brought into compliance by July 1, 2003. FCZR § 5.11.030(9).

¶19    An offsite sign is a sign that advertises "an establishment, merchandise, service or entertainment" located elsewhere. The definition explicitly excludes billboards. FCZR § 7.18.060(8). Offsite signs are not designed to display temporary messages and are restricted to 64 square feet per face. FCZR § 5.11.020(3).

¶20    Due to a Montana Department of Transportation road widening project, State law required that Montana Media move a number of billboards that were within the County's jurisdiction. Consequently, the billboards would have to comply with the County ordinance when they were moved. Montana Media did not apply for a permit before making alterations to one of its billboards outside of Hungry Horse. Furthermore, its billboards were not brought into compliance. The County notified Montana Media of the infractions and requested its signs be brought into compliance.

¶21    On May 25, 2000, Montana Media filed a complaint in the District Court for the Eleventh Judicial District in Flathead County, in which it requested declaratory relief from both the City and County ordinances. Montana Media alleged that the City

7

and County ordinances violated Montana's Outdoor Advertising Act and the County ordinance violated the Montana and United States Constitutions. Later, it was alleged that the City ordinance was unconstitutional as well. The City filed an answer, that denied the allegations, and a counterclaim, that requested injunctive relief enjoining Montana Media from operating the two subject billboards and ordered their removal. The County filed an answer, that denied the allegations, and counterclaim, that requested the court to order that Montana Media bring two of its non-conforming billboards into compliance.

¶22 On October 18, 2000, a hearing was held in the District Court and Montana Media argued that both the City and the County ordinances violated the Outdoor Advertising Act. Montana Media also argued that the City and County ordinances violated the United States and Montana Constitutions': (1) prohibitions against prior restraints; (2) equal protection clauses; (3) due process clauses; (4) takings clauses; and (5) vagueness clauses.

¶23 On March 7, 2001, the District Court issued an Order which denied declaratory relief against the City and denied declaratory relief against the County except for the equal protection claim. On September 4, 2001, the District Court issued an Order which permanently enjoined Montana Media from operating its signs in violation of the City ordinance. The County's request for injunctive relief will be decided following an evidentiary hearing regarding the equal protection allegations.

8

¶24 The District Court certified that its orders were final pursuant to Rule 54(b), M.R.Civ.P., and Montana Media obtained a stay of execution of the District Court's orders pending this appeal.

## STANDARD OF REVIEW

¶25 Our review of questions of constitutional law is plenary. *In Re Custody of Krause*, 2001 MT 37, ¶ 16, 304 Mont. 202, ¶ 16, 19 P.3d 811, ¶ 16 (citation omitted). We review a district court's interpretation of the law to determine if it is correct. *Custody of Krause*, ¶ 16 (citation omitted).

## DISCUSSION

## ISSUE 1

¶26 Did the District Court err when it concluded that the City and County ordinances do not impose an unconstitutional restriction on commercial speech?

¶27 Montana Media asserts that the City ordinance places a greater restriction on off-premise signs and billboards than it places on other offsite signs and that the County ordinance places greater restrictions on billboards than other offsite signs. Montana Media contends that the City and County ordinances violate the First Amendment because the City and County have failed to demonstrate that the subject ordinances directly advance the governmental interests asserted and are not more extensive than necessary to serve that interest.

¶28 The Supreme Court has recognized that pursuant to First Amendment speech protections, each medium of communication is subject to its own law and reflects

9

differing societal values and needs. *Metromedia, Inc. v. City of San Diego* (1981), 453 U.S. 490, 501, 101 S.Ct. 2882, 2889, 69 L.Ed.2d 800. To determine what law applies to the current appeal "requires a particularized inquiry into the interests at stake here beginning with a precise appraisal of the character of the ordinance as it affects communication." *Metromedia, Inc.*, 453 U.S. at 503, 101 S.Ct. at 2890.

¶29 The subject signs are freestanding structures designed to convey different commercial messages or, in other terms, billboards. Due to the permanence, structure and design of billboards, they present a unique set of problems for development and planning. Designed to draw attention, billboards potentially distract motorists from their primary task of driving, clutter the landscape and obscure the natural and historic features that attract many to areas such as the Flathead Valley and the City of Whitefish. In order to balance a business' interest in advertising with the public's interest in safety and aesthetics, the City and County adopted sign ordinances to regulate the size and location of signs. Specifically, the ordinances place restrictions and prohibitions on billboards. Consequently, both ordinances must be analyzed pursuant to the law of billboards.

¶30 It is well established that commercial and noncommercial speech enjoy different protections in the context of the First Amendment. *Metromedia, Inc.*, 453 U.S. at 506, 101 S.Ct. at 2891-892. Commercial speech is accorded less constitutional protection than noncommercial speech. *Metromedia, Inc.*, 453 U.S. at 506, 101 S.Ct. at 2890. The Supreme Court has noted that commercial speech may be

10

regulated in situations where noncommercial speech may not be. *Metromedia, Inc.*, 453 U.S. at 506, 101 S.Ct. at 2892.

¶31 A four-part analysis has been developed by the United States Supreme Court to determine the validity of a commercial speech restriction. First, commercial speech must concern a lawful activity and not be misleading to be protected. *Central Hudson Gas & Elec. v. Public Serv. Comm'n* (1980), 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341. Next, there must be a substantial government interest for adopting a restriction on commercial speech. *Central Hudson Gas & Elec.*, 447 U.S. at 566, 100 S.Ct. at 2351. If the speech is protected and there is a substantial government interest, the regulation must directly advance the asserted government objective, and reach no further than necessary to accomplish that objective. *Central Hudson Gas & Elec.*, 447 U.S. at 566, 100 S.Ct. at 2351. The government bears the burden of demonstrating a substantial interest and justifying the challenged regulation. *Greater New Orleans Broadcasting Assn., Inc. v. United States* (1999), 527 U.S. 173, 183, 119 S.Ct. 1923, 1930, 144 L.Ed.2d. 161.

¶32 The parties concede that the billboards in this case are protected commercial speech and that aesthetics and safety are substantial governmental interests. The controversy arises from the third and fourth prongs of the *Central Hudson* inquiry. Montana Media contends that the City and County failed to meet their burden of demonstrating that their sign ordinances directly advance the interest of aesthetics and safety, and are not more extensive than necessary. Montana Media suggests that

11

the Respondents' reliance upon *Metromedia* is misplaced in light of subsequent cases that provide stronger protection for commercial speech and increase the government's burden of proof with concern to the third and fourth prong of *Central Hudson*.

¶33    In *Metromedia*, the United States Supreme Court considered whether a San Diego sign ordinance that permitted onsite commercial advertising, prohibited offsite commercial billboards, and prohibited most noncommercial messages was constitutional. *Metromedia, Inc.*, 453 U.S. at 503, 101 S.Ct. at 2890. The record indicated that the subject signs historically displayed both commercial and noncommercial messages. Recognizing that commercial speech enjoyed less protection than noncommercial speech, the Court bifurcated the issues. *Metromedia, Inc.*, 453 U.S. at 504-05, 101 S.Ct. at 2891.

¶34    The restriction on commercial speech was reviewed pursuant to the four-part *Central Hudson* analysis. The first prong of *Central Hudson* was not at issue, and there was no question that traffic safety and aesthetics constituted a substantial government interest. *Metromedia, Inc.*, 453 U.S. at 507-08, 101 S.Ct. at 2892-893. The Court proceeded to the fourth prong of *Central Hudson* and postulated that a billboard prohibition was the most effective means to improve safety and aesthetics. *Metromedia, Inc.*, 453 U.S. at 508, 101 S.Ct. at 2893. Therefore, it concluded that San Diego had reached no further than necessary to accomplish its objective, which satisfied the fourth prong of *Central Hudson*. *Metromedia, Inc.*, 453 U.S. at 508, 101 S.Ct. at 2893. In fact, the Court noted that San Diego had stopped short of fully

12

accomplishing its goals because it permitted onsite advertising and specifically exempted other signs from the prohibition. *Metromedia, Inc.*, 453 U.S. at 508, 101 S.Ct. at 2893.

¶35 With respect to the third prong, the Court concluded that the prohibition of offsite billboards was directly related to San Diego's interest in traffic safety and improving aesthetics. *Metromedia, Inc.*, 453 U.S. at 509-12, 101 S.Ct. at 2893-895. Metromedia's contention that the distinction made between onsite and offsite advertising was impermissible was dismissed by the Court, which deferred to the city's judgement in placing a higher value on one form of commercial speech over another in the context of regulating billboards. *Metromedia, Inc.*, 453 U.S. at 510-12, 101 S.Ct. at 2893-895. Consequently, the San Diego ordinance was constitutionally valid as it pertained to commercial speech and the third prong of *Central Hudson* was satisfied. *Metromedia, Inc.*, 453 U.S. at 512, 101 S.Ct. at 2895.

¶36 The second part of *Metromedia* addressed San Diego's restriction on noncommercial speech. The ordinance permitted onsite commercial messages, but did not provide for noncommercial speech. The Court's analysis finds fault with the fact that the ordinance restricted noncommercial speech more than commercial speech in contravention of the greater constitutional protection enjoyed by noncommercial speech. *Metromedia, Inc.*, 453 U.S. at 513, 101 S.Ct. at 2895. Consequently, the Court held that the manner in which San Diego restricted noncommercial speech

13

rendered the ordinance invalid. *Metromedia, Inc.*, 453 U.S. at 521, 101 S.Ct. at 2899.

¶37 Montana Media contends that *Metromedia* has limited precedential value because subsequent commercial speech cases raise the government's burden of proof and provide stronger constitutional protections for commercial speech than existed at the time *Metromedia* was decided. The cases cited by Montana Media stand for the propositions that the government must demonstrate that: (1) the harms asserted by the government are real and that the restriction will "alleviate them to a material degree" to satisfy the third prong of *Central Hudson*; and (2) the challenged regulation must reflect careful consideration of the cost and benefit of the regulation in light of the burden imposed on speech to satisfy the fourth prong. *Greater New Orleans Broadcasting Assn., Inc.*, 527 U.S. at 188, 119 S.Ct. at 1932.

¶38 However, this line of cases does not address billboard law. The Ninth Circuit has held that these cases do not alter the applicability of *Metromedia* to billboard cases. *Ackerly Communications of Northwest v. Krochalis* (1997 9th Cir.), 108 F.3d 1095, 1099-1100. We agree. The commercial speech cases cited by Montana Media involve different communicative mediums. Specifically, the cases involve sidewalk news racks and radio advertisements. News racks and radio waves do not create the same problems that a 400 square foot sign that is specifically designed to draw attention to itself causes. Nothing in the Supreme Court cases cited by Montana Media changes the standard for commercial billboards established in *Metromedia*.

14

We conclude that while the Supreme Court has considered numerous commercial speech issues since, *Metromedia* remains the controlling law in billboard cases.

¶39 The application of *Metromedia* is limited only by the factual differences and the precise issues presented by this appeal. The challenged ordinance in *Metromedia* provided in part:

> The following signs shall be prohibited:
>
> . . . .
>
> 3. Any sign which advertises or otherwise directs attention to a product, service or **activity, event, person, institution**, or business . . . which occurs or is generally conducted, sold, manufactured, produced or offered elsewhere than on the premise where the sign is located. [Emphasis added.]

*Metromedia, Inc.*, 453 U.S. at 493, 101 S.Ct. at 2885. The ordinance prohibited both noncommercial and commercial offsite billboards. While onsite commercial signs were permitted most noncommercial speech was prohibited. Consequently, the Court bifurcated the issues. On the issue of commercial speech *Metromedia* establishes that it is constitutionally permissible to prohibit offsite commercial billboards to further the goals of traffic safety and aesthetics. The flaw in the San Diego ordinance was that it accorded onsite commercial speech more protection than noncommercial speech. *Metromedia* suggests that an ordinance which only prohibits offsite commercial speech would be valid.

A. City Ordinance

¶40 The City ordinance subjects commercial signs to greater restrictions than non-commercial signs. Off-premise signs that advertise "an establishment, merchandise, service,

15

or entertainment, which is not sold, produced, manufactured, or furnished at the property on which the sign is located" are restricted to industrial and commercial zones, subject to size, setback and permit regulations. WZJR § 17.120.340. Noncommercial signs are permitted throughout the entire city.

¶41 The noncommercial speech restrictions found in the San Diego ordinance are not present in the City ordinance. The restriction on commercial signs is consistent with greater protection accorded to noncommercial speech by the First Amendment. Consequently, only the commercial speech analysis in *Metromedia* applies to the facts before us.

¶42 *Metromedia* noted that the distinction made between onsite and offsite commercial advertising did not invalidate the regulation for being underinclusive. *Metromedia, Inc.*, 453 U.S. at 511-12, 101 S.Ct. at 2894-895. Referring to the greater value accorded to onsite commercial speech, the Court stated: "the city may believe that offsite advertising, with its periodically changing content, presents a more acute problem than does onsite advertising." *Metromedia, Inc.*, 453 U.S. at 511, 101 S.Ct. at 2895 (citation omitted). Setting billboards back from the public right-of-way and restricting billboard size alleviates the visual impact of billboards and improves both safety and aesthetics. Furthermore, permitting billboards in industrial and commercial areas where aesthetics have already been sacrificed for commerce, while prohibiting them in other zones makes perfect sense and is in line with the City's objective. Therefore, we conclude that the City ordinance directly advances the City's goal of reducing visual blight and traffic hazards created by billboards and satisfies the third prong of *Central Hudson*.

16

¶43    In *Metromedia*, the Court concluded that a billboard prohibition was the most effective remedy for the traffic hazards and visual blight caused by billboards, which satisfied the fourth prong of *Central Hudson*. *Metromedia, Inc.*, 453 U.S. at 508, 101 S.Ct. at 2893. The Court further held that San Diego had gone no further than necessary to meet its end. *Metromedia, Inc.*, 453 U.S. at 508, 101 S.Ct. at 2893.

¶44    In this case, billboards are only prohibited in residential areas and subject to restrictions in commercially zoned areas. The City's ordinance is more narrowly tailored than the ordinance in *Metromedia* and restricts speech no more than is necessary to achieve its objective. We conclude that the City ordinance reaches no further than necessary to accomplish its objective.

B.  County Ordinance

¶45    The County ordinance provides two different definitions for the term billboard. The definition of billboard relied upon by both parties refers only to those signs that are designed to advertise commercial messages. Consequently, we review the County ordinance in light of the billboard definition provided for at FCZR § 7.18.060(2).

¶46    The County's billboard restrictions are similar to those found in the City ordinance. Montana Media does not dispute the County's characterization of its signs as billboards. Consequently, we apply the *Central Hudson* criteria as adopted in *Metromedia* to the County ordinance to determine if the ordinance is a valid commercial speech regulation.

¶47    The first two prongs of *Central Hudson* are not disputed. The County ordinance regulates protected commercial speech and the County has asserted a substantial interest in

reducing the traffic hazards and visual blight caused by billboards. Therefore, we must determine whether the ordinance directly advances the County's objective and whether the regulation reaches further than necessary to achieve that objective.

¶48 The County ordinance provides a more specific and limited definition of the term billboard than provided for in the City ordinance. The County billboard regulations only apply to those signs designed with a surface upon which temporary poster panels or painted bulletins can be displayed for the purpose of advertising commercial messages. FCZR § 17.18.060(2). Other offsite signs are treated differently. This discrepancy is attributed to the fact that billboards can be up to 432 square feet, whereas other offsite signs are limited to 64 square feet. Billboards are allowed in certain industrial zones subject to permit, size, and setback restrictions, while they are prohibited throughout the remainder of Flathead County. Consequently, we adopt the logic expressed in our analysis of the City ordinance.

¶49 Consistent with *Metromedia*, we conclude that it is within the County's discretion to prohibit billboards in areas where other commercial or noncommercial signs are permitted. Logic dictates that a 432 square foot sign may create an unacceptable traffic hazard and eyesore in a zone where the benefit of a commercial message displayed on a 64 square foot sign face, or at a place of business, may outweigh those harms. We conclude that the County ordinance directly advances the County's objective and resolve the third prong of *Central Hudson* in the County's favor.

¶50 Whether or not the prohibition and permit requirements imposed upon billboards by the County reach further than necessary is the final question. *Metromedia* is clear on this

18

issue and has been adopted above. We conclude that the County ordinance reaches no further than necessary to achieve its goals and, therefore, the fourth prong of *Central Hudson* is satisfied.

ISSUE 2

¶51 Did the District Court err when it concluded that the City and County ordinances do not create and unconstitutional prior restraint on speech?

¶52 Montana Media contends that both the City and County ordinances place an unconstitutional prior restraint on speech because the ordinances give the City and County unbridled authority to grant or deny a permit based upon the content of the sign. We note that a substantial portion of Montana Media's argument with regard to this issue discusses the City and County ordinances' treatment of different categories of noncommercial speech. However, noncommercial speech was not the subject before the District Court, therefore, no factual record was developed below and those arguments are not properly raised before this Court. We only consider whether the ordinance is an unconstitutional prior restraint of commercial speech.

¶53 An ordinance or regulation that subjects protected speech to prior restraint without narrow, objective and definite standards to guide the permitting officials violates the First Amendment. *Desert Outdoor Advertising, Inc. v. City of Moreno Valley* (1996 9th Cir.), 103 F.3d 814, 818 (citation omitted). The law may not condition the exercise of free speech on the unbridled discretion of permitting officials. *Desert Outdoor Advertising, Inc.*, 103 F.3d at 818 (citation omitted). Whether the prohibition against prior restraints applies to

19

commercial speech is subject to debate. In *Central Hudson*, the Court stated: "commercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply to it." *Central Hudson Gas & Elec.*, 447 U.S. at 571, 100 S.Ct. at 2354. The issue has not been revisited by the Court and has created uncertainty throughout the land. Nor has it been adequately briefed in this case. Therefore, we dispose of Montana Media's assertions without determining whether the doctrine of prior restraint applies to commercial speech based on those facts and arguments properly raised on appeal.

¶54 The City ordinance provides that permits required for a change of copy, design, size or illumination, shall be granted within fourteen days of an application. WZJR § 17.100.100(a-f). The applicant is required to provide the location of the sign, the name and address of the property owner, the type of sign or structure, a site plan, and a scale drawing to receive a permit. WZJR § 17.100.100(d). The administrator has little discretion when deciding to grant or deny a permit and is required to issue a permit if the alteration or proposal complies with the applicable City laws and regulations. What constitutes an off-premise sign in the City ordinance is objectively defined and not subject to interpretation. If an off-premise sign complies with the ordinance, a permit must be granted within fourteen days. We conclude the City ordinance does not grant City officials unfettered discretion and provides objective guidelines for the issuance of a permit.

¶55 The County ordinance provides that proposed construction, reconstruction, replacement, or alteration of a billboard, beyond a change of copy and maintenance, requires a conformance permit. FCZR § 5.11.030(10). A billboard is objectively defined as a sign

20

capable of displaying poster panels or painted bulletins, that advertises products, services or businesses not located on that premise. FCZR § 7.18.060(2). The permit process ensures that billboards comply with the setback and size requirements and does not consider the message of the sign or give County officials the authority to deny a permit that satisfies those standards. Consequently, we conclude that the County ordinance does not grant officials unfettered discretion and provides objective guidelines for the issuance of a permit. For these reasons, we affirm the District Court's conclusion that neither the City nor County ordinances creates an unconstitutional prior restraint on speech.

## ISSUE 3

¶56 Did the District Court err when it concluded that the City and County ordinances are not unconstitutionally vague?

¶57 Montana Media contends that the City and County ordinances' vague nature grants officials sweeping authority to interpret the ordinances as he or she sees fit. Furthermore, Montana Media maintains that both ordinances are susceptible to inconsistent and arbitrary application. Specifically, the definition of political sign in the City and County ordinances, the holiday sign exemption in the City ordinance, and the distinction between offsite signs and billboards in the County ordinance are cited as fatally flawed.

¶58 A noncriminal statute or regulation is unconstitutionally vague if a person of common intelligence must necessarily guess at its meaning. *Broers v. Montana Dept. of Revenue* (1989), 237 Mont. 367, 371, 773 P.2d 320, 323. However, a term is not vague simply because it can be dissected or subject to different interpretations. *Broers*, 237 Mont. at 371,

21

773 P.2d at 323. This Court is required to uphold the constitutionality of a statute when that can be accomplished by a reasonable construction of the statute. *Broers*, 237 Mont. at 371, 773 P.2d at 323.

¶59   The City ordinance provides that political signs, and campaign and election signs do not require permits. Political signs express "a political or social position, as compared to expressing support for a political candidate or election measure," campaign signs advertise a candidate for public office or a political party, and election signs advertise or support an election measure. WZJR §§ 17.120.360, 17.120.140, 17.120.190. We conclude that there is nothing vague or uncertain about what these terms mean.

¶60   Next, Montana Media suggests that the exemption of holiday or non-profit special event decorations leads to "some dangerous conclusions." This assertion is followed by a list of unanswered questions supported by no analysis, and in the end, leaves only one question to be answered: Where's the Beef?

¶61   Finally, Montana Media asserts that the distinction made between offsite signs and billboards by the County ordinance is vague and gives the County too much discretion in determining what signs require a conformance permit. We acknowledge that there is a distinction between billboards and offsite signs. Irrespective of this observation, Montana Media fails to demonstrate that the definitions are vague.

¶62   We conclude that the City and County ordinances are not unconstitutionally vague.

22

ISSUE 4

¶63 Did the District Court err when it concluded that the City and County ordinances do not violate the procedural due process clause?

¶64 Montana Media contends that the City and County ordinances violate procedural due process of law because they do not guarantee a hearing before deprivation of property.

¶65 Article II, Section 17 of the Montana Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law." Due process requires both notice of a proposed action and the opportunity to be heard. *Pickens v. Shelton-Thomas*, 2000 MT 131, ¶ 13, 300 Mont. 16, ¶ 13, 3 P.3d 603, ¶ 13. Montana Media is required to demonstrate that it: (1) has a property interest; and (2) the procedures in place provide an inadequate protection of that property interest.

¶66 There is no dispute that Montana Media has a property interest in its billboards. The issue before this Court is whether the ordinances include procedural protections for an aggrieved party to be heard before property is taken. Procedural Due Process requires that some form of hearing be available that provides a meaningful and timely opportunity to be heard before property is taken. *See Logan v. Zimmerman* (1982), 455 U.S. 422, 434, 102 S.Ct. 1148, 1156-157, 71 L.Ed.2d 265, *and Matter of Connell v. State* (1997), 280 Mont. 491, 496, 930 P.2d 88, 99. Procedural Due Process does not prescribe what procedural safeguards must be in place. *Logan*, 455 U.S. at 434, 102 S.Ct. at 1157. However, the procedure should reflect the nature of the private and governmental interests involved. Only under exigent circumstances, where the government's interest requires immediate action, may a post-

23

deprivation rather than a pre-deprivation hearing satisfy due process. *Boddie v. Connecticut* (1971), 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113.

¶67 The Board of Adjustment is responsible for hearing appeals that allege an error related to the enforcement of either the City or County ordinance. The Board is bound by known procedures and there is a right to appeal the board's determination to a court of record. Once an appeal is filed, enforcement is stayed unless a stay would cause eminent peril to person or property. In this case, all enforcement against Montana Media has been stayed. Pursuant to the ordinance, only under exceptional circumstances, which do not apply in this case, could the City or County deprive someone of their property without a hearing. We conclude that the procedural safeguards provided for in the City and County ordinances provide sufficient procedural safeguards and ensure that a pre-deprivation hearing is available to aggrieved parties.

ISSUE 5

¶68 Did the District Court err when it concluded that the City ordinance does not violate Montana Media's right to equal protection?

¶69 Montana Media contends that it demonstrated that the City does not apply its ordinance uniformly among off-premise signs because it failed to regulate its own "Welcome to Whitefish" sign. It is argued that the sign is an off-premise sign and has been treated differently than other off-premise signs.

¶70 Article II, Section 4 of the Montana Constitution provides that "[n]o person shall be denied the equal protection of the laws." The equal protection clause requires that "all

24

persons be treated alike under like circumstances." *Grooms v. Ponderosa Inn* (1997), 283 Mont. 459, 467, 942 P.2d 699, 703.

¶66 The "Welcome to Whitefish" sign does not advertise an establishment, merchandise, service or entertainment that is located elsewhere. Therefore, the welcome sign and subject signs are not alike. Furthermore, the welcome sign fits within the official government sign exemption found at WZJR § 17.100.040. In this case, we conclude that the City did not violate the equal protection clause of either the state or federal constitutions when it treated the "Welcome to Whitefish" sign differently than the subject signs.

¶67 For the foregoing reasons the judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

25