No. 05-677

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 119

_____

STATE OF MONTANA,

        Plaintiff and Appellant,

    v.

STACY PYETTE,

        Defendant and Respondent.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DC-05-170,
The Honorable Douglas G. Harkin, Presiding Judge.

COUNSEL OF RECORD:

        For Appellant:

            Hon. Mike McGrath, Attorney General; Brenda Nordlund, Assistant
Attorney General, Helena, Montana

            Fred Van Valkenburg, County Attorney; Dale Mrkich, Deputy County
Attorney, Missoula, Montana

        For Respondent:

            Jeffrey T. Renz and Kimberly Coburn, intern, School of Law, University
of Montana, Missoula, Montana

_____

Submitted on Briefs:  September 26, 2006
Decided:  May 22, 2007

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     The State of Montana (State) appeals from an order entered in the Fourth Judicial District Court, Missoula County, remanding this case to the Missoula Justice Court with an order to dismiss the charge of Driving While License is Suspended filed against Stacy Pyette (Pyette). We reverse and remand.

BACKGROUND

¶2     On August 21, 2003, Pyette was cited for traffic violations. She was convicted of those offenses on February 10, 2004, in the Missoula County Justice Court (Justice Court). Pyette was fined $270.00. Pyette entered a time-pay contract with the Justice Court which allowed her to make monthly payments on the fine. The Justice Court provided Pyette with a document setting out the terms of the agreement titled "Notice to Defendants Regarding Payments of Fines" (1st Notice).

¶3     The 1st Notice required Pyette to follow the Justice Court's policies and meet its expectations. Pyette was to make monthly payments until paid in full. If Pyette had any problems or issues she was also required to contact "the Court BEFORE the monthly payment is due if problems arise for one (1) extension." Pyette was also required to appear "before the Court for further discussion if advised to do so."

¶4     The 1st Notice listed Pyette as the defendant and advised her of the consequences of non-payment as follows:

> according to [§§] 61-5-214, 215, and 216, [MCA,] the Defendant's driver's license may be suspended indefinitely until all fines are paid in full and a $100.00 reinstatement fee is paid to the Motor Vehicle Division in Helena.

2

¶5 Pyette acknowledged that she received the 1ˢᵗ Notice. Subsequently, Pyette made two payments but did not make the remainder of the required payments.

¶6 On March 25, 2004, the Justice Court sent Pyette a second notice entitled Notice of Imminent Driver's License Suspension (2ⁿᵈ Notice). The 2ⁿᵈ Notice stated:

> [y]ou have not made an appearance before this court or paid the assessed fines. If you do not appear to address this notice, this Court will notify the Department of Justice, and your driver's license will be suspended. To avoid this consequence you must act within ten (10) days.

The 2ⁿᵈ Notice also stated that once Pyette's driver's license was suspended she would not be eligible for a probationary driver's license, a work permit, or any driving privileges during suspension. Pyette did not appear within ten days. She did nothing. She has not alleged that she did not receive the 2ⁿᵈ Notice, nor has she challenged whether the notice was properly served. Pyette has not argued that the ten days provided for her to act was too short a time.

¶7 On April 29, 2004, the Montana Department of Justice, Motor Vehicle Division (MVD) sent Pyette an Order of Suspension. The Order of Suspension stated that Pyette's license was suspended under § 61-5-214, MCA, because she failed to pay fines associated with an earlier traffic offense. The Order of Suspension stated that Pyette should contact the Justice Court directly to obtain information, requirements and fees for restoration of her driver's license. Pyette was informed that her driver's license could be restored when the Justice Court notified the Department that the suspension should be lifted and when she complied with court requirements to regain her license. Again, Pyette did nothing.

3

¶8 On October 19, 2004, Pyette was stopped for speeding and, *inter alia*, cited for operating a vehicle while her driver's license was suspended. She moved the Justice Court to dismiss the driving while her license was suspended charge, arguing § 65-4-214, MCA, is unconstitutional on its face. The motion was denied. On April 18, 2005, Pyette plead guilty in the Justice Court to operating a motor vehicle while her driver's license was suspended, reserving her right to appeal the denial of her motion to dismiss, as provided by § 46-12-204(3), MCA. After sentencing, Pyette timely filed notice of appeal from the sentence and judgment to the Fourth Judicial District Court, Missoula County (District Court).

¶9 On June 24, 2005, Pyette challenged the constitutionality of § 61-5-214, MCA, in the District Court. She argued that the statute denied her due process because the statute did not provide for a hearing before her license was suspended. The District Court held that Pyette's constitutional right to due process was violated because § 61-5-214, MCA, did not clearly set forth the procedure under which a driver can appear and contest the notice of license suspension. Thus, the District Court held the statute unconstitutional on its face because it violates due process. The District Court remanded this case to the Justice Court ordering that the charge of driving while license suspended be dismissed. This appeal by the State followed.

¶10 The facts are not in dispute. The issue presented is whether the District Court erred in concluding that application of the provisions of § 61-5-214, MCA, which resulted in the suspension of Pyette's driver's license, provided her with the required due process.

4

¶11    The grant or denial of a motion to dismiss in a criminal case is a question of law which we review *de novo* on appeal. Our standard of review is plenary, and we determine whether a district court's conclusion is correct. *State v. McKee*, 2006 MT 5, ¶ 16, 330 Mont. 249, ¶ 16, 127 P.3d 445, ¶ 16. When the constitutional issue of denial of due process as a matter of law underlies the action, our review is plenary. *In re T.W.*, 2005 MT 340, ¶ 11, 330 Mont. 84, ¶ 11, 126 P.3d 491, ¶ 11.

¶12    Statutes are accorded a presumption of constitutionality; the burden of proof is upon the party challenging a statute's constitutionality. *GBN, Inc. v. Montana Dept. of Revenue*, 249 Mont. 261, 265, 815 P.2d 595, 597 (1991). Any doubt is to be resolved in favor of the statute. *GBN,* 249 Mont. at 265, 815 P.2d at 597.

¶13    Once issued, a driver's license becomes a property interest that may not be suspended or revoked without the procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution. *State ex rel. Majerus v. Carter*, 214 Mont. 272, 276, 693 P.2d 501, 503 (1984) (citing *Bell v. Burson*, 402 U.S. 535, 91 S. Ct. 1586 (1971)). To satisfy due process requirements in the context of a driver's license suspension, states must afford notice and an opportunity for a hearing. *Seyferth v. State, Dept. of Justice, Motor Vehicle Div.*, 277 Mont. 377, 381, 922 P.2d 494, 497 (1996) (citing *Bell,* 402 U.S. at 542, 91 S. Ct. at 1591). The notice must be one reasonably calculated, under all the circumstances, to inform the affected party of the impending action and to give an opportunity to present objections. *Montanans for Justice v. State ex rel McGrath*, 2006 MT 277, ¶ 30, 334

5

Mont. 237, ¶ 30, 146 P.3d 759, ¶ 30; *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 656-57 (1950).

¶14 While procedural due process does not prescribe exactly what procedural safeguards must be in place, the procedure should reflect the nature of the private and governmental interests involved. *Montana Media, Inc. v. Flathead County*, 2003 MT 23, ¶ 66, 314 Mont. 121, ¶ 66, 63 P.3d 1129, ¶ 66. The process due in any given case varies according to the factual circumstances of the case, the nature of the interests at stake and the risk of making an erroneous decision. Due process requirements of notice and a meaningful hearing are "flexible" and are adapted by the courts to meet the procedural protections demanded by the specific situation. *McGrath*, ¶ 30 (citing *McDermott v. McDonald*, 2001 MT 89, ¶ 10, 305 Mont. 166, ¶ 10, 24 P.3d 200, ¶ 10, and *Geil v. Missoula Irr. Dist.*, 2002 MT 269, ¶ 58, 312 Mont. 320, ¶ 58, 59 P.3d 398, ¶ 58).

¶15 Pyette contends that § 61-5-214, MCA, is too vague and violates due process because it does not set forth the procedure under which a person can appear and contest a suspension of their driver's license before such suspension occurs. Challenges to statutes based on a violation of a person's due process rights rest on the lack of notice, and thus may be overcome in a specific case where reasonable persons are advised what must be done to avoid a certain result. Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the case at hand, that is, the statute is judged on an as-applied basis. *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 1857-58 (1988). If a person of ordinary intelligence is given fair notice of what is required to forestall an adverse result from the application of a statute, such statute is not

6

unconstitutionally vague. *See Com'n on Unauthorized Practice v. O'Neil*, 2006 MT 284, ¶ 81, 334 Mont. 311, ¶ 81, 147 P.3d 200, ¶ 81.

¶16   The DVM suspended Pyette's driver's license pursuant to § 61-5-214, MCA, which provides in pertinent part:

> (1) The department shall suspend the driver's license or driving privilege of a person upon receipt of a report from the court, certified under penalty of law and in a form prescribed by the department, that the person:
>
>     . . . .
>
> (b) (iii) when assessed a fine, costs, or restitution of $100 or more, failed to pay the fine, costs, or restitution; and
>
> (c) received prior written notice that the driver's license or driving privileges of the person would be suspended upon:
>
>     . . . .
>
> (iii) failure to pay assessed fines, costs, or restitution.
>
> (2) The suspension continues in effect until the court notifies the department that:
>
> (a) the person has either appeared in court or paid the assessed fines, costs, or restitution; and
>
>     . . . .
>
> (3) The notice required under this section may be included on the summons or complaint and notice to appear form given to the person when charges are initially filed or may be contained in a court order, either hand-delivered to the person while in court or sent by first-class mail, postage prepaid, to the most current address for that person received by or on record with the court. The initial notice must be followed by a written warning from the court, sent by first-class mail, advising the person that a license suspension is imminent and of the probable consequences of a suspension unless the person appears or pays within a specified number of days.

¶17  Where the adequacy of a notice of proposed action that is given pursuant to a statute providing for the revocation of a driver's license is at issue, a court is to consider the following three factors:

> first, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mackey v. Montrym*, 443 U.S. 1, 10, 99 S. Ct. 2612, 2617 (1979) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 902 (1976)) (*See also*, *Dixon v. Love*, 431 U.S. 105, 112-13, 97 S. Ct. 1723, 1727 (1977), and *Matter of Vinberg*, 216 Mont. 29, 32, 699 P.2d 91, 93 (1985)).

¶18  Under the first of the factors to be considered under *Matthews*, a person's personal interest in a driver's license is substantial because, *inter alia*, the use of a motor vehicle affects the ability of a person to make a living. *Majerus*, 214 Mont. at 276, 693 P.2d at 503; *Bell*, 402 U.S. at 539, 91 S. Ct. at 1589 (depriving a person of his or her vehicle may significantly impact that person's ability to earn a living).

¶19  Considering the second factor set out in *Matthews*, we conclude that there was little risk of an erroneous suspension of Pyette's driver's license considering the notice she was given pursuant to § 61-5-214(3), MCA. Also, the value of additional or substitute procedural safeguards is questionable. *See McGrath*, ¶ 30.

¶20  The District Court, in support of its decision that Pyette was given inadequate notice of how to forestall an erroneous suspension of her driver's license, cited *City of Redmond v. Moore*, 151 Wash.2d 664, 91 P.3d 875 (2004). In *City of Redmond,* the Washington Supreme Court held that Washington's statute providing for suspension of a

8

driver's license was unconstitutional because there was no provision for a person to contest the suspension. However, unlike § 61-5-214(3), MCA, the statute declared to violate due process in *City of Redmond* did not contain a requirement that the person whose license may be suspended be given notice that she could appear before the court prior to the suspension. Thus, *City of Redmond* is inapposite.

¶21 As noted by the United States Supreme Court in *Matthews*, due process requires an opportunity to appear and contest the deprivation of a driver's license in order to protect against the erroneous suspension of a valuable right. *Matthews*, 424 U.S. at 335, 96 S. Ct. at 902. Notice requirements exist, in most part, to permit one who is about to be deprived of a property interest the opportunity to challenge the deprivation before it happens. The United States Supreme Court has established the basic standard for determining whether a notice satisfies due process.

> An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane*, 339 U.S. at 314, 70 S. Ct. at 657.

¶22 It cannot be gainsaid that the 1st Notice told Pyette that if she did not pay according to the schedule she agreed to, her license would be suspended. The 2nd Notice clearly advised her that she had neither paid as agreed, nor appeared before the Justice Court to make alternate arrangements. She was also advised that if she did not appear before the Justice Court within ten days her driver's license would be suspended.

¶23 Generally, a notice need not contain the exact procedure for protecting a property

9

interest. *See City of West Covina v. Perkins,* 525 U.S. 234, 242, 119 S. Ct. 678, 682 (1999). A person threatened with the deprivation of a protected interest need not be told "how to complain." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14-15 n. 15, 98 S. Ct. 1554, 1563 n. 15.

¶24 The 2nd Notice sent to Pyette, as required by § 61-5-214(3), MCA, is sufficient to inform a person of ordinary intelligence that she had the right to appear before the court prior to the time her driver's license would be suspended. A plain meaning of the word "appear" is "to come before an authoritative body; . . . to present oneself formally as plaintiff, defendant, or counsel." Webster's Third New International Dictionary, 103 (Phillip Babcock Gove ed., Merriam-Webster 2002). The 2nd Notice did not explain in detail what the procedure would be if Pyette did "appear to address this notice." However, a person of ordinary intelligence, by being told she could appear before the court, would know that if she chose to appear she could protest and attempt to correct an erroneous suspension.

¶25 When read in the context of proceedings specifically pertaining to Pyette, the notices that she received were neither confusing nor inconsistent. The notices conveyed the Justice Court's expectations regarding payment of the fines imposed. They informed Pyette that if payment problems arose, recourse was available in the form of either an extension or appearance for further discussion. Both notices directed Pyette to contact the Justice Court and provided her with a proper telephone number and address. Additionally, the 2nd Notice informed Pyette of the Justice Court's possible course of

10

action. In short, Pyette knew that her license would be suspended if she did not appear. She chose not to appear, and sure enough, her license was suspended.

¶26 After considering the risk of an erroneous deprivation of a driver's license under the existing procedure, and the probable value of a notice worded differently, which would still have to be generic so as to cover all possible situations, we conclude that the second prong of the *Matthews* test is met. The requirements of a notice that meets due process are flexible, and can be adopted to meet the procedural protections demanded by the specific situation. *See McGrath*, ¶ 30. We hold that the notice provided to Pyette that her driver's license was about to be suspended if she did not appear before the court, while perhaps not perfect, is sufficient to satisfy the constitutional requirement of due process.

¶27 The final *Matthews* factor considers the urgency of the government's interest in requiring the suspension of a driver's license for failure to pay a legally imposed fine; including the fiscal and administrative burden of providing additional procedural safeguards. *See Matthews*, 424 U.S. at 335, 96 S. Ct. at 902. The State has an important interest in the efficient and cost-effective administration of its driver's license system, including ensuring that offending drivers appear in court, comply with court orders, and pay properly imposed fines. The State's interest in collecting fines might not rise to the urgency of the State's compelling interest in keeping unsafe drivers off the road. *See Vinberg*, 216 Mont. at 31, 699 P.2d at 93 (the State's compelling interest in highway safety authorizes immediate suspension of a driver's license for driving under the influence of alcohol); *Dixon*, 431 U.S. at 115, 97 S. Ct. at 1729 (a state's interest is

compelling where the purpose of the statute is to keep drivers off the road who are unable or unwilling to respect traffic rules and the safety of others). However, the State's interest in collecting fines and enforcing traffic laws is of sufficient importance to justify the suspension of Pyette's driver's license subsequent to the time she was given the opportunity to appear before the Court for the purpose of correcting any mistake in the procedure.

¶28 We conclude that Pyette was not denied due process in the suspension of her driver's license.

¶29 Reversed and remanded for further proceedings consistent with this opinion.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE