DA 10-0185

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 45

CAROL A. WALTERS, individually as the Mother
to her deceased son, Timothy Dwayne Walters
and as Personal Representative of the Estate
of Timothy Dwayne Walters,

      Plaintiff and Appellant,

  v.

FLATHEAD CONCRETE PRODUCTS, INC., a Montana
Corporation and its successors, and DOES 1-100,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DV 08-1146C
                  Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Alan J. Lerner; Lerner Law Firm; Kalispell, Montana

            Sydney E. McKenna (argued); Tornabene & McKenna, PLLC; Missoula,
            Montana

      For Appellee:

            Todd A. Hammer; Angela K. Jacobs (argued); Hammer, Hewitt, Jacobs &
            Floch, PLLC; Kalispell, Montana

      For Amici Curiae:

            Lawrence A. Anderson (argued); Attorney at Law, P.C.; Great Falls,
            Montana

            Amy Eddy; Bottomly & Eddy Trial Attorneys, PLLP; Kalispell, Montana

1

(Attorney for Montana Trial Lawyers Association (MTLA))

Bradley J. Luck (argued), Isaac M. Kantor; Garlington, Lohn & Robinson, PLLP; Missoula, Montana

Steven W. Jennings; Crowley Fleck, PLLP; Billings, Montana (Attorney for Montana Defense Trial Lawyers Association (MDTL))

Kevin Braun, Curtis Larsen; Special Assistant Attorneys General; Helena, Montana (Attorneys for Montana State Fund)

Argued:  December 8, 2010
Submitted:  December 14, 2010
Decided:  March 16, 2011

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     The Eleventh Judicial District Court, Flathead County, granted summary judgment to Flathead Concrete Products, Inc. (FCP), on the grounds that § 39-71-411, MCA, the exclusive remedy provision of the Workers' Compensation Act (WCA or Act), bars Carol Walters' (Walters) survivorship and wrongful death claims against FCP arising from the work-related death of her son, Timothy Walters (Tim).  The District Court also denied Walters' motion for partial summary judgment asserting that § 39-71-411, MCA, and § 39-71-721(4), MCA, are unconstitutional.  Walters appeals.  We affirm.

¶2     We restate the issue as follows:

¶3     Did the District Court err in holding that Walters' claims were barred by the exclusive remedy provision of the WCA and denying her claim that § 39-71-411, MCA, and § 39-71-721(4), MCA, were unconstitutional?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On December 14, 2006, Tim was tragically run over and crushed by a company forklift while engaged in his employment.  The record indicates that Tim was treated by emergency personnel and taken to the hospital, dying later that day from his injuries.

¶5     At his death, Tim was 42 years old, was not married, and had no children.  He resided with his mother, Carol Walters, but did not provide support to her in an amount

3

which would qualify her as his dependent as defined by 26 U.S.C. § 152, which is incorporated by § 39-71-116(4)(e), MCA (2005).[1]

¶6    FCP provided workers' compensation coverage to its employees through the Montana Contractor Compensation Fund (MCCF).  Pursuant to FCP's coverage, MCCF assumed responsibility for Tim's medical and hospital bills related to his treatment and death under § 39-71-704, MCA, his burial expenses up to $4,000 under § 39-71-725, MCA, and a $3,000 payment to Walters in her capacity as a non-dependent parent under § 39-71-721(4), MCA.

¶7    Walters filed a complaint asserting survivorship and wrongful death claims against FCP, based upon alleged intentional and negligent acts and omissions by FCP.  FCP moved for summary judgment on Walters' claims based upon the exclusive remedy rule stated in § 39-71-411, MCA.  Walters conceded in response that she could not meet the heightened standard of proof necessary to establish an intentional injury claim which would circumvent the exclusive remedy rule, but she moved for partial summary judgment on the grounds that § 39-71-721(4), MCA (providing $3,000 payment to non-dependent parent) and § 39-71-411, MCA (exclusive remedy) were unconstitutional because the quid pro quo was not satisfied.  Based on the asserted unconstitutionality of these provisions, Walters argued that her negligence claims against FCP should be permitted to proceed.  The District Court denied Walters' constitutional challenges and

---

[1] The 2005 version of the WCA applies. *See Heisler v. Hines Motor Co*., 282 Mont. 270, 276, 937 P.2d 45, 48 (1997) (citation omitted) ("[T]he law in effect on the date of the claimant's injury . . . must be applied.").  References to the WCA herein are to the 2005 version.

4

granted FCP's motion for summary judgment. Walters appealed, and we granted motions from the Montana Trial Lawyers Association, the Montana Defense Trial Lawyers Association, and Montana State Fund to participate as amici curiae.

## STANDARD OF REVIEW

¶8 On appeal from a district court's grant of summary judgment, our standard of review is de novo, and we apply the criteria set forth in M. R. Civ. P. 56. *Alexander v. Bozeman Motors, Inc.*, 2010 MT 135, ¶ 15, 356 Mont. 439, 234 P.3d 880 (citation omitted). "Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Town & Country Foods, Inc. v. City of Bozeman*, 2009 MT 72, ¶ 12, 349 Mont. 453, 203 P.3d 1283 (citations omitted).

¶9 This Court's review of constitutional questions is plenary. *Alexander*, ¶ 16 (citing *Rohlfs v. Klemenhagen, LLC*, 2009 MT 440, ¶ 7, 354 Mont. 133, 227 P.3d 42). The constitutionality of a statute is a question of law, and we review a district court's legal conclusions for correctness. *Alexander*, ¶ 16 (citing *Rohlfs*, ¶ 7).

## DISCUSSION

¶10 Walters broadly states her issue on appeal as: "Is $3,000 for the death of a worker constitutional?" Under this issue, Walters presents several arguments challenging provisions of the WCA. She argues that because Tim did not receive wage loss benefits, the quid pro quo upon which the Act is based is eliminated as to Tim, and because the $3,000 payment she received as a non-dependent parent is "not fair and balanced," the

5

quid pro quo is eliminated as to her. Walters thus argues that the exclusive remedy provision, § 39-71-411, MCA, should be set aside to allow her claims against FCP to proceed. She also argues that the challenged provisions of the WCA are fundamentally unfair and violate substantive due process. Walters' fairness arguments are overlapping, and she offers that "workers compensation quid pro quo is a due process analysis . . . ." We considered quid pro quo as part of a substantive due process analysis in *Satterlee v. Lumberman's Mutual Casualty Co.*, 2009 MT 368, ¶¶ 36-39, 353 Mont. 265, 222 P.3d 566, but independent of substantive due process in *Stratemeyer v. Lincoln County* (*Stratemeyer II*), 276 Mont. 67, 74-79, 915 P.2d 175, 179-82 (1996). Here, we analyze the issue in both ways.

¶11 The Montana Constitution sets forth the basis for the workers' compensation exclusive remedy provision. *Adsem v. Roske*, 224 Mont. 269, 270-71, 728 P.2d 1352, 1353 (1986). Article II, Section 16 provides:

> **The administration of justice**. Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. *No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state*. Right and justice shall be administered without sale, denial, or delay.

Mont. Const. art. II, § 16 (emphasis added). This constitutional authority to deprive full legal redress by barring claims against employers who provide workers' compensation coverage "is implemented by Section 39-71-411, MCA . . . ." *Adsem*, 224 Mont. at 271, 728 P.2d at 1353. That provision states:

> *[A]n employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act* or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of such injuries or death. *The Workers' Compensation Act binds the employee himself, and in case of death binds his personal representative and all persons having any right or claim to compensation for his injury or death*, as well as the employer and the servants and employees of such employer . . . .

Section 39-71-411, MCA (emphasis added). In simple terms, this means that "when an employee is injured in the work place due to negligence or accident, his remedy is exclusive to the Workers' Compensation Act. Common law damages are not available under Section 39-71-411, MCA, for injuries negligently or accidentally inflicted by an employer. Negligence claims should be dismissed on this ground." *Sitzman v. Shumaker*, 221 Mont. 304, 307, 718 P.2d 657, 659 (1986) (internal citation omitted). The exclusive remedy provision binds not only the employee himself, but "in case of death binds his personal representative and all persons having any right or claim" for his injury or death. Section 39-71-411, MCA; *see Maney v. La. Pac. Corp.*, 2000 MT 366, ¶ 20, 303 Mont. 398, 15 P.3d 962 ("[T]he Act's exclusivity provision bars any third party action against an employer for compensation claimed 'as a result of' or 'concerning' an employee's injury or death."). Thus, on its face, § 39-71-411, MCA, bars all claims made here on behalf of Tim and Walters.

¶12    The exclusive remedy is the benefit which employers are to receive from the quid pro quo compromise when they provide workers' compensation insurance coverage. Injured workers are to receive a no-fault recovery from the compromise:

> "The purpose of the [WCA] is to protect both the employer and the employee by incorporating a *quid pro quo* for negligent acts by the employer. The employer is given immunity from suit by an employee who is injured on the job in return for relinquishing his common law defenses. The employee is assured of compensation for his injuries, but foregoes legal recourse against the employer."

*State Farm Fire & Cas. Co. v. Bush Hog, LLC*, 2009 MT 349, ¶ 13, 353 Mont. 173, 219 P.3d 1249 (citation omitted); *accord Sitzman*, 221 Mont. at 307-08, 718 P.2d at 659. As we explained in *Stratemeyer II*, "[t]he exclusive remedy rule is perhaps the most firmly entrenched doctrine in workers' compensation law. The rationale for adopting workers' compensation legislation was to guarantee workers with work-related injuries some form of compensation in exchange for relinquishing any potential tort claims against their employers." *Stratemeyer II*, 276 Mont. at 74, 915 P.2d at 179 (internal citations omitted).

¶13 Walters argues that the quid pro quo bargain upon which the exclusive remedy is premised does not exist in this case, relying upon our decision in *Stratemeyer II*. Stratemeyer suffered a mental injury known as a "mental-mental" injury in his employment as a deputy sheriff. *Stratemeyer II*, 276 Mont. at 70, 75-76, 915 P.2d at 176, 180. We noted that "it is unequivocally clear that mental injuries, such as Stratemeyer's, are beyond the scope of coverage of the Workers' Compensation Act" and Stratemeyer had "no possibility of recovery" under the Act. *Stratemeyer II*, 276 Mont. at 76, 915 P.2d at 180. We thus concluded that "there is no quid pro quo for workers who suffer 'mental-mental' injuries. . . . Absent the quid pro quo, the exclusive remedy cannot stand, and the employer is thus exposed to potential tort liability." *Stratemeyer II*, 276 Mont. at 76, 915 P.2d at 180 (citations omitted). Stated conversely, "[t]he exclusive

remedy rule applies only if the injury suffered by the worker is covered by the Act." *Stratemeyer II*, 276 Mont. at 78, 915 P.2d at 181 (citations omitted).

¶14 FCP argues that, unlike the claimant in *Stratemeyer II*, Tim suffered an injury which is covered and compensable as defined by the Act. *See* § 39-71-119(1), MCA ("'Injury' or 'injured' means: (a) internal or external physical harm to the body . . . (c) death."). Unlike Stratemeyer, who could never be eligible for coverage, Tim's covered injury gave him "some possibility of recovery," *Stratemeyer II*, 276 Mont. at 75, 915 P.2d at 179, and thus the quid pro quo and exclusive remedy remain existent. Tim's estate was not left with "no possibility of recovery." *Stratemeyer II*, 276 Mont. at 76, 915 P.2d at 180. FCP's argument is supported by our decision in *Maney*.

¶15 Maney was the mother of Jason Fogleson, an employee killed while working, and she brought tort claims against Fogleson's employer.[2] *Maney*, ¶¶ 5-6. The district court granted summary judgment to the employer based on the exclusive remedy rule of the WCA. *Maney*, ¶ 7. We began by noting that "the initial inquiry in determining whether the § 39-71-411, MCA, exclusive remedy provision applies is whether the employee suffered an 'injury' as defined in § 39-71-119, MCA." *Maney*, ¶ 16. We reasoned that, unlike the claimants in *Stratemeyer II* and other similar holdings, Fogleson's "physical injury and death were compensable injuries under the Act, thus bringing into play the exclusive remedy provision." *Maney*, ¶ 16. We also concluded the mother's

---

[2] The mother's claims were for negligence, loss of consortium, negligent and intentional infliction of emotional distress, and violations of the Montana Safety Act. *Maney*, ¶ 6.

9

"independent tort" claims were likewise precluded by the exclusive remedy provision. *Maney*, ¶¶ 22, 26. Addressing the exclusive remedy statute, we stated:

> [Section] 39-71-411, MCA, provides that "an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the . . . Act . . . ." *This language is clear and unequivocal. An employer has no liability for an employee's work-related injury or death which is compensable under the Act.* The statute then states that, in case of an employee's death, the Act binds "all persons having any right or claim to compensation for his injury or death . . . ." This also is clear and unequivocal. In the case of an employee's death, the employer has no liability for any claim of any person for that injury and death.

*Maney*, ¶ 20 (emphasis added).

¶16 Like the injured worker in *Maney*, Tim sustained an injury which was covered and compensable under the Act. Thus, the claims made here for Tim's injury are distinguishable from those made in *Stratemeyer II* in the same manner as the claims made in *Maney*. The basis for the Court's conclusion in *Stratemeyer II* that the quid pro quo had failed—that the Act provided no coverage for the injury—is not present in this case. Tim's injury was covered by the Act, and he had "some possibility of recovery." *Stratemeyer II*, 276 Mont. at 75, 915 P.2d at 179.

¶17 Walters also argues that the quid pro quo should be deemed to be nonexistent here because the amount of benefits paid under the Act is insufficient to sustain the bargain. She argues that "the Act is only viable if it is fair," and that, here, "the 'bargain' is not fair and balanced." However, beyond *Stratemeyer*, distinguished above, Walters offers no authority to support the proposition that the quid pro quo can be challenged on a stand-alone "fair and balanced" theory. She cites Article II, Section 16 as incorporating

10

the quid pro quo, but that section does not address the quid pro quo directly and provides no mandates concerning its content. Walters' argument that the quid pro quo is unfair and unreasonable is properly considered as part of her substantive due process challenge, which tests "the reasonableness of a statute in relation to the State's power to enact such legislation." *Raisler v. Burlington Northern R.R. Co.*, 219 Mont. 254, 263, 717 P.2d 535, 541 (1985). She argues that the "Constitution mandates fairness," and that an unfair benefit payment renders the quid pro quo and the exclusive remedy unconstitutional, citing *N.Y. Central R.R. Co. v. White*, 243 U.S. 188, 205-06, 37 S. Ct. 247, 254 (1917) (noting the possibility of criticism "on the ground that the compensation prescribed by the statute in question is unreasonable in amount").

¶18    We have explained substantive due process as follows:

> "The essence of substantive due process is that the State cannot use its police power to take unreasonable, arbitrary or capricious action against an individual. In order to satisfy substantive due process guarantees, a statute enacted under a state's police power must be reasonably related to a permissible legislative objective."

*Town & Country Foods*, ¶ 17 (quoting *Raisler*, 219 Mont. at 263, 717 P.2d at 541); *accord Satterlee*, ¶ 33. "Substantive due process primarily examines underlying substantive rights and remedies to determine whether restrictions are unreasonable or arbitrary when balanced against the purpose of a government body in enacting a statute, ordinance or regulation." *Town & Country Foods*, ¶ 17 (citations omitted). "[I]n essence, substantive due process analysis requires that we decide (1) whether the legislation in question is related to a legitimate governmental concern, and (2) that the

11

means chosen by the Legislature to accomplish its objective are reasonably related to the result sought to be attained." *Plumb v. Fourth Jud. Dist. Ct.*, 279 Mont. 363, 372, 927 P.2d 1011, 1016 (1996).

¶19 FCP objects to Walters' substantive due process claim on the ground that Walters cannot "meet the threshold showing of a protected property interest." Relying primarily on *Germann v. Stephens*, 2006 MT 130, 332 Mont. 303, 137 P.3d 545, FCP argues that it is "beyond dispute" that a substantive due process claim necessitates a threshold showing of a constitutionally protected property interest, and that the District Court properly denied the claim on this basis.[3]

¶20 In *Germann*, the plaintiff brought procedural and substantive due process claims, as well as federal and state takings and equal protection claims, against the City of Whitefish and City officials. *Germann*, ¶¶ 1, 17, 25. In discussing due process, we did not distinguish between substantive and procedural claims, stating generally and without specific analysis that "[s]tate due process and takings claims likewise require the plaintiff to first establish that it has a property interest." *Germann*, ¶ 27. As support for this statement, we cited *Montana Media, Inc. v. Flathead County*, 2003 MT 23, ¶ 65, 314 Mont. 121, 63 P.3d 1129, a procedural due process case. *Germann*, ¶ 27.

---

[3] The District Court did not expressly hold that Walters did not have a constitutionally protected *property* interest, stating: "A due process claim can only arise from the deprivation of a constitutionally protected interest. . . . [Walters] does not have a constitutionally protected interest." However, the District Court did cite to *Germann* as support for its statement.

¶21 The due process guarantee "has both a procedural and a substantive component." *State v. Egdorf*, 2003 MT 264, ¶ 19, 317 Mont. 436, 77 P.3d 517. We have differentiated between these components as follows:

> The process requirement necessary to satisfy procedural due process comes into play only after a showing that a property or liberty interest exists. *ISC Distributors, Inc. v. Trevor* (1995), 273 Mont. 185, 191, 903 P.2d 170, 173. Substantive due process bars arbitrary governmental actions regardless of the procedures used to implement them and serves as a check on oppressive governmental action. *Englin v. Bd. of County Com'rs*, 2002 MT 115, ¶ 14, 310 Mont. 1, ¶ 14, 48 P.3d 39, ¶ 14.

*Egdorf*, ¶ 19. Consistent with this description, we have noted that "'[e]ven though a plaintiff may have no property or liberty interest grounded in state law which is protected from arbitrary government action, such action still may be subject to review under substantive due process.'" *Powell v. State Compen. Ins. Fund*, 2000 MT 321, ¶ 28, 302 Mont. 518, 15 P.3d 877 (quoting *Newville v. State, Dept. of Fam. Servs.*, 267 Mont. 237, 249, 883 P.2d 793, 800 (1994)).

¶22 We find it incongruent for FCP to argue on the one hand that there was an exchange of interests sufficient to satisfy the quid pro quo bargain supporting the exclusive remedy, but to argue on the other hand that Walters lacks an interest sufficient to test whether the quid pro quo bargain satisfied substantive due process. We conclude that Walters has demonstrated an interest which is sufficient to bring her challenge.

¶23 Walters asserts that the failure to pay wage loss benefits for Tim, and payment of the small benefit of $3,000 to her, is insufficient to sustain the quid pro quo. She argues that, under Article II, Section 16 of the Constitution, an employer must provide wage loss

13

benefits, offering that "[t]here were no wage loss benefits paid to Tim after his death, so there was no quid pro quo between Tim and his employer." As to the $3,000 payment made to her, Walters argues that it bears no relationship to the amount of wages lost, to the public policy of promoting safety in the workplace, and there is no "permissible objective in providing that, in the event a worker dies without a spouse or dependents, his death is worth $3,000."

¶24 Walters' arguments about the sufficiency of the benefits are focused, primarily, on the failure of FCP's coverage to provide wage loss payments. FCP and its amici criticize Walters' approach as a "single benefit impeachment" of the Act and ask that we reject her "microscopic" inquiry in favor of a broader review of the overall compensation scheme, noting that our decision in *Satterlee* did not turn on eligibility for one particular benefit: "[W]hile the claimant who suffers a work related injury after becoming eligible for SSRI may not be able to qualify for PTD benefits, he or she is still eligible for benefits of sufficient significance to satisfy the *quid pro quo* principle." *Satterlee*, ¶ 38.

¶25 We are not persuaded by Walters' arguments that we are bound to look only at wage loss benefits in analyzing the quid pro quo issue. Wage loss benefits are important and serve an important purpose under the Act, but are not the only benefit provided by the Act. It is appropriate to consider these other benefits Tim may have been eligible to receive, as we did in *Satterlee*. Walters argues that wage loss benefits are mandated by Article II, Section 16, but that provision refers generally to employers providing "coverage," not wage loss benefits. However, on the other hand, testing the quid pro quo

14

by considering the total sum of all benefits paid under the Act to all injured workers, as posited by FCP, would be an overly broad inquiry rendering an individual quid pro quo challenge futile. Therefore, we begin by considering the Act's purposes and provisions with regard to a worker who suffers an injury causing death during the course of his or her employment.

¶26 The Act provides for payment of a deceased worker's medical and hospital expenses related to his injury and death. Sections 39-71-704; 39-71-736(1)(b), MCA. The Act provides for payment of burial expenses of a deceased worker, up to $4,000. Section 39-71-725, MCA. Compensation for an injury causing death is governed by § 39-71-721, MCA, which incorporates the categories of beneficiaries defined in § 39-71-116, MCA. Subsection 721(2) provides wage loss benefits to a deceased worker's surviving spouse "living with or legally entitled to be supported by the deceased"; an unmarried child of the deceased under 18 years of age; an unmarried child under 22 years of age who is a full-time student or enrolled in an apprenticeship program; and an invalid child over 18 years of age who satisfies the federal statutory definition of dependency. Sections 39-71-721(2); 39-71-116(4)(a)-(d), MCA. If the deceased worker has none of these family members, then subsection 721(3) provides wage loss benefits to a dependent brother or sister under the age of 18 years, or to a dependent parent, again as defined by federal statute. Sections 39-71-721(3); 39-71-116(4)(e)-(f), MCA.

¶27 Tim had none of these dependents. Although she was Tim's parent, Walters did not satisfy the federal definition of dependency incorporated into the Act which would

15

have entitled her to wage loss payments. She thus received the payment provided by subsection 721(4), a lump sum payment of $3,000 paid to "the decedent's surviving parent or parents." Section 39-71-721(4), MCA.

¶28 Walters' arguments fairly include both a facial and as-applied challenge to these provisions, and our analysis encompasses both. Though "'[t]he purpose of the legislation does not have to appear on the face of the legislation or in the legislative history, but may be any possible purpose of which the court can conceive,'" *Satterlee*, ¶ 34 (citation omitted), the Act expresses numerous purposes, and we have noted in previous cases the general governmental concerns underlying the WCA. The workers' compensation system is "intended to be primarily self-administering. Claimants should be able to speedily obtain benefits, and employers should be able to provide coverage at reasonably constant rates." Section 39-71-105(4), MCA. The system is designed "to provide, without regard to fault, wage-loss and medical benefits to a worker suffering from a work-related injury or disease. . . . at a reasonable cost to the employer." Section 39-71-105(1), MCA. We have noted a purpose to "promote the continued economic welfare of employers who pay into the State Fund and the welfare of employees who receive compensation benefits." *Raisler*, 219 Mont. at 264, 717 P.2d at 541. We have identified improving the financial viability of the system, controlling costs of the system, and providing benefits as "legitimate governmental objective[s]." *Stratemeyer v. Lincoln Co. (Stratemeyer I)*, 259 Mont. 147, 155, 855 P.2d 506, 511 (1993). We have further noted that the quid pro quo itself serves legitimate purposes, providing "no fault recovery" for

16

workers and "predictability of consistent workers compensation payments" for the employer. *Satterlee*, ¶ 39.

¶29 We have held that "'[t]he power of the legislature to fix [the] amounts, time and manner of payment of workers' compensation benefits is not doubted.'" *Satterlee*, ¶ 34 (quoting *Ingraham v. Champion Intl.*, 243 Mont. 42, 48, 793 P.2d 769, 772 (1990)). Here, the Legislature created a framework whereby medical, hospital, and burial benefits are paid for all deceased workers, but wage loss benefits are paid only to the worker's dependents—his or her surviving spouse, children, or other relatives. The challenged statutes evidence a legislative intention to manage resources by paying wage loss benefits only to those people who are dependent upon the deceased worker's wages. Spouses and minor children are automatically provided for, while other relatives, such as adult children, siblings, and parents, must satisfy dependency requirements before they can receive the deceased worker's wage benefits. As in *Satterlee*, where we said it was not irrational that the Legislature may have decided to protect "the most vulnerable claimants, those who do not qualify for SSRI" by allowing them to continue to receive PTD benefits even after they reached the age at which they would otherwise lose the benefit, here the Legislature clearly intended to limit wage loss benefits to people who depended upon the worker's wages—those who were made "most vulnerable" by reason of a worker's death. *See Satterlee*, ¶ 34.

¶30 Walters' arguments focus on the small amount she received and, without question, the amount is minimal. However, she overlooks the overall purposes of the statutes

17

addressing deceased workers, which provide medical, hospital, and burial benefits to all deceased workers, and provide wage benefits for a deceased worker's dependents. Here, she ignores a critical fact—she is not a dependent. She offers no challenge to the Act's method of determining dependency, arguing only that the benefit she received was insufficient. She offers no explanation about why the Legislature's determination to pay wage loss only to dependents, and to provide a small payment to non-dependents, in addition to the other benefits provided, is unreasonable. As has been noted to the contrary, about the need to protect dependents: "'the [workers' compensation] award itself is completely cut off in most jurisdictions when, through the death of the worker without dependents, for example, there is no further need to worry about anyone's becoming destitute.'" 1 A. Larson, *Larson's Workmen's Compensation Law* § 2.60, 12-13 (1990), as quoted in *Yarchak v. Munford, Inc.*, 570 So. 2d 648, 650 (Ala. 1990). (Emphasis omitted.)

¶31 *Taylor v. Southeast-Harrison Western Corp.*, 694 P.2d 1160 (Alaska 1985), involved the death of a worker who had no statutory dependents. His estate brought an action for his wrongful death, challenging the exclusive remedy provision of the Workers' Compensation Act on equal protection grounds. *Taylor*, 694 P.2d at 1161. The Alaska Supreme Court noted an "overwhelming weight of authority" upholding the exclusive remedy provision for non-dependents, *Taylor*, 694 P.2d at 1162, and stated:

> Here the legislature has chosen to provide greater compensation to the estates of those deceased workers leaving dependents, *i.e.* persons, such as children and spouses, who are generally dependent, at least in part, upon the deceased worker's salary for their own support. The fact that they are

18

entitled to favored treatment, over the estates of workers leaving no dependents, reflects a legislative determination that the former require greater compensation, because of the need to replace the income that provided support for those dependent upon the deceased worker prior to his death.

*Taylor*, 694 P.2d at 1162. The Court concluded that this legislative determination was reasonable, and the Act did not violate equal protection. *Taylor*, 694 P.2d at 1162-63.

¶32 We have stated the burden to be satisfied in constitutional challenges to legislation as follows:

> "The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt."

*Powell*, ¶ 13 (quoting *Stratemeyer I*, 259 Mont. at 150, 855 P.2d at 508-09). The party challenging a statute's constitutionality carries the burden of proving the statute unconstitutional beyond a reasonable doubt. *Satterlee*, ¶ 10 (citing *Henry v. State Compen. Ins. Fund*, 1999 MT 126, ¶ 11, 294 Mont. 449, 982 P.2d 456). If there is any doubt as to constitutionality, the resolution must be made in favor of the statute. *Satterlee*, ¶ 10 (citing *Powell*, ¶ 13).

¶33 We have noted that "[a]s with all legislative compromises, the WCA is not infallible and the legislative decisions made in adopting the WCA are subject to honest debate." *Satterlee*, ¶ 37. We certainly concur with that statement here. It is easy to opine that the Legislature could have done better in providing for family members after a

19

worker's death, even those who are non-dependents of the worker. Work-related death is traumatic, final, and adversely impacts a family forever. However, the law requires us to recognize that "such a debate involves issues and decisions about public policy that are clearly of the sort much better suited to the halls of the legislature." *Satterlee*, ¶ 38.

¶34 We conclude that the Act, in providing medical, hospital, and burial benefits, and providing wage loss benefits only to dependents of deceased workers, while providing a minimal payment to a non-dependent parent, is rationally related[4] to the recognized legitimate government objectives of the Act. Out of available resources, the Legislature logically directed wage loss benefits to those persons who depended upon them, and paid a small amount to those who did not. Under the challenge presented here, the Act was not arbitrary or unreasonable, and satisfied substantive due process and the quid pro quo.

¶35 Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ JEFFREY H. LANGTON
District Court Judge Jeffrey H. Langton,
sitting for former Justice W. William Leaphart

---

[4] Walters argues that we should apply strict scrutiny review, but we have long held that challenges to workers' compensation statutes are subject to rational basis review. *See Satterlee*, ¶ 17; *see also Matter of C.H.*, 210 Mont. 184, 194, 683 P.2d 931, 936 (1984).

Justice Patricia O. Cotter concurs.

¶36 I agree with the Court and Justices Wheat and Nelson that $3,000 is a paltry sum that bears no correlation to Tim's actual lost future earnings. However, I join the Court's Opinion because the quid pro quo extends to injured workers and their beneficiaries, as defined in the Workers Compensation Act. It does not extend to persons who are not beneficiaries of the deceased worker.

¶37 No one can dispute that the benefits available under the Act do not make injured workers—or their beneficiaries—whole. The Act acknowledges as much at § 39-71-105(1), MCA. Although the 2011 legislative session is not yet over, it appears we may see even greater limitations placed on benefits. All this being so, I cannot conclude that loading what benefits are available towards workers and their beneficiaries, and away from non-beneficiaries and non-dependent relatives, is irrational. It is a matter of allocation of resources in favor of those who stand to suffer the most financially from the worker's injury or death.

¶38 Justice Nelson may well be correct in observing that we will someday be presented with a case establishing that the quid pro quo no longer exists. In my judgment, this is not that case.

¶39 I therefore concur.

/S/ PATRICIA COTTER

Justice Michael E Wheat dissents.

¶40 I dissent. In my opinion, the unavailability of wage loss benefits to a non-dependent parent violates the *quid pro quo* that supports the WCA. Furthermore, the $3,000 death benefit that is available to a non-dependent parent is unreasonable and also violates the *quid pro quo.*

¶41 Under the Act, the legislature has used "dependency" as a cut-off point for the recovery of wage loss benefits. Although Carol was partially dependent on Tim's wages, she did not meet the statutory definition, so her benefits were limited to a payment of $3,000. This paltry amount has no reasonable correlation to Tim's actual lost future earnings, which were nearly $800,000.

¶42 If Tim had been killed in a car crash caused by another person's negligence, Carol, as the personal representative, would have been able to recover damages in a survival action pursuant to § 27-1-501, MCA, including the present value of Tim's lost future earnings. The survival action is personal to the decedent and any damages recovered belong to the decedent's estate and are distributable to the heirs of the decedent. *See Swanson v. Champion Intl. Corp.*, 197 Mont. 509, 515, 646 P.2d 1166, 1169 (1982); *Payne v. Eighth Jud. Dist. Ct.*, 2002 MT 313, ¶ 7, 313 Mont. 118, 60 P.3d 469. The complete denial of future wage loss benefits to Tim's estate violates the *quid pro quo* and should remove the exclusivity protection under the Act.

¶43 In my opinion, if there are no "dependency" beneficiaries, as defined by the Act, then the wage loss benefits that would have been available to a defined beneficiary

22

should go to the decedent's estate for distribution to the heirs or as directed by his or her will. I cannot imagine that a working person being asked to give up what could be recovered in a survival action in exchange for worker's compensation benefits (the *quid pro quo*) would not want it this way.

¶44    I would reverse the District Court and find that the *quid pro quo* was violated in this case.

/S/ MICHAEL E WHEAT

Justice James C. Nelson, dissenting.

¶45    I agree with Justice Wheat's Dissent.

¶46    Article II, Section 16 of Montana's Constitution guarantees to all Montanans, as a fundamental right,[1] that courts of justice shall be open to every person; that speedy remedy shall be afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay. Coverage under the Workers' Compensation Act (Title 39, chapter 71, MCA) provides the sole exception to these fundamental constitutional guarantees. This exception is premised on the existence of a real, bona fide, quid pro quo. And when the quid pro quo ceases to exist as a practical matter—that is, when it no longer fairly balances what employers and injured workers are getting for what they are giving up—the Workers' Compensation Act

---

[1] *Walker v. State*, 2003 MT 134, ¶ 74, 316 Mont. 103, 68 P.3d 872 (the rights found in Montana's Declaration of Rights are "fundamental").

23

exception to Article II, Section 16 is no longer met. While the Legislature has the power to determine and adjust the specifics of the quid pro quo from time to time, that body does not have the power to effectively abrogate it without destroying the constitutional exception itself.

¶47 This case may not be *the* case which raises that issue. But, given the direction of workers' compensation reform, there will likely come a case which presents this Court with the issue of whether the whole Workers Compensation Act, or significant parts of it, has been rendered unconstitutional under Article II, Section 16 because, as a practical matter, the quid pro quo no longer exists.

¶48 I dissent.

/S/ JAMES C. NELSON