*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MARIANNE E. BURKE, Personal Representative of the Estate of ABIGAIL CAUDLE, | ) ) ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| CRITERION GENERAL, INC.; ALASKA USA FEDERAL CREDIT UNION; and STATE OF ALASKA, | ) ) ) ) |
| | ) |
| Appellees. | ) |
| | ) |

Supreme Court No. S-17766

Superior Court No. 3AN-18-09109 CI

O P I N I O N

No. 7564 – November 5, 2021

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Marianne E. Burke, pro se, Wasilla, Appellant. John B. Thorsness, Clapp, Peterson, Tiemessen, Thorsness LLC, Anchorage, for Appellee Criterion General, Inc. Jahna M. Lindemuth and Samuel G. Gottstein, Holmes Weddle & Barcott, PC, Anchorage, for Appellee Alaska USA Federal Credit Union. Laura Wolff, Assistant Attorney General, Anchorage, and Clyde "Ed" Sniffen, Jr., Acting Attorney General, Juneau, for Appellee State of Alaska.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices, and Eastaugh, Senior Justice.* [Borghesan, Justice, not participating.]

WINFREE, Justice.

## I. INTRODUCTION

An apprentice electrician, who was unmarried and had no dependents, was working for a construction project subcontractor when she died in an accident. Her direct employer paid funeral benefits required by the Alaska Workers' Compensation Act; no other benefits were required under the Act. The employee's estate brought a wrongful death action against the general contractor and the building owner; they asked the superior court to dismiss the action based on the Act's exclusive liability provisions, which were expanded in 2004 to include contractors and project owners. The estate moved for summary judgment, arguing that the 2004 exclusive liability expansion violated due process because it left the estate without an effective remedy. The court rejected the estate's argument and dismissed the wrongful death action, entering judgment against the estate. We affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

This is the second appeal involving Abigail Caudle's work-related death; we derive the facts from our opinion in *Burke v. Raven Electric, Inc.*[1] Caudle was working as an apprentice electrician for Raven Electric, Inc. in connection with

---

    *    Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

    [1]    420 P.3d 1196 (Alaska 2018).

remodeling an Alaska USA Federal Credit Union building; it was her first day on that particular job.[2]

The general contractor, Criterion General, Inc., "changed the scope of work after Raven Electric's crew arrived"; rather than roughing in three offices as originally planned, the Raven workers were told to remove existing light fixtures.[3] No one disconnected the power to the lights that were being removed, although the light switch of the fixture Caudle worked on was turned off and "a noncontact voltage meter" she was using did not indicate the fixture was energized.[4] Caudle nevertheless was electrocuted and died; electricians interviewed during the subsequent occupational safety investigation suggested that the circuit had been wired incorrectly in the past.[5]

After Alaska's Occupational Safety and Health Division investigated the incident, it cited Raven "for several safety violations and ultimately agreed through an informal settlement to fine [Raven] a total of $11,200."[6] Raven also paid $10,000 for Caudle's funeral expenses,[7] the only workers' compensation death benefit available to the estate of an employee who dies without a spouse or other dependents.[8]

---

[2]      *Id.* at 1199 & n.2.

[3]      *Id.*

[4]      *Id.* at 1199.

[5]      *Id.*

[6]      *Id.*

[7]      *Id.* at 1200.

[8]      *See* AS 23.30.215.

Caudle's mother, Marianne Burke, filed a claim with the Alaska Workers' Compensation Board.[9] After a hearing at which the Board clarified that Burke was not the personal representative of Caudle's estate, the Board rejected Burke's claim because Burke had not shown she met the eligibility requirements for dependent benefits under the Act.[10] Burke appealed to the Alaska Workers' Compensation Appeals Commission, which affirmed the Board's decision; she then appealed to this court.[11] We declined to address any arguments Burke made on behalf of Caudle's estate because Burke had not been appointed personal representative.[12] Considering Burke's possible claim as a parent, we decided that the Act did not violate her rights to due process or equal protection.[13] The United States Supreme Court denied certiorari.[14]

Burke was appointed personal representative of Caudle's estate (Estate) in August 2018, and in September the Estate filed a wrongful death action against Criterion and Alaska USA. The Estate alleged that the 2004 amendments to the Act violated the Estate's constitutional right to due process, citing both a footnote from *Schiel v. Union Oil Co. of California*[15] regarding the possibility that very low workers' compensation for

---

[9]    *Burke*, 420 P.3d at 1200.

[10]    *Id.* at 1201.

[11]    *Id.* at 1201-02.

[12]    *Id.* at 1203.

[13]    *Id.* at 1203-06.

[14]    *Burke v. Raven Elec., Inc.*, 140 S. Ct. 135 (2019).

[15]    219 P.3d 1025, 1036 n.63 (Alaska 2009) (noting employer's agreement to question whether inadequate benefits might violate due process), *overruled on other grounds by Buntin v. Schlumberger Tech. Corp.*, 487 P.3d 595, 598 & n.4 (Alaska 2021).

(continued...)

an injury might violate an employee's due process rights and the "inadequate benefits of zero compensation and a funeral expense" for the death.

Relying on *Schiel* the Estate moved for summary judgment, focusing on the right to procedural due process in light of our prior decisions and arguing that the lack of an adequate remedy deprived the Estate of its due process rights.[16] The Estate distinguished *Schiel* because the worker in *Schiel* received workers' compensation benefits and therefore still had a "substantial and efficient remedy" for his loss.[17] The Estate argued that the low level of funeral benefit compensation from Raven coupled with the inability to bring a wrongful death action against Criterion and Alaska USA effectively deprived the Estate of any remedy, violating the right to due process under the Alaska and United States Constitutions. The Estate contended that legislative policies underlying the 2004 amendments "wholly fail[ed] to apply" as there was no risk of "double-dipping" because no workers' compensation benefits had been paid, yet the Estate was unable "to access the courts for any compensatory damages whatsoever

---

[15]     (...continued)
*Schiel* involved a certified question from federal district court asking us whether the 2004 amendments violated due process or equal protection under the Alaska Constitution. *Id.* at 1029. We held that the amendments did not violate the employee's rights under those Alaska Constitution provisions. *Id.* at 1037.

[16]     *See* Alaska R. Civ. P. 56(c) (setting out summary judgment procedure and providing that judgment may be entered for a party if undisputed facts demonstrate that party is entitled to judgment as matter of law). In its summary judgment motion the Estate expressly said it was not raising an equal protection argument, so any equal protection argument the Estate may be making on appeal is waived. *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal.").

[17]     *See Schiel*, 219 P.3d at 1035 (holding that claimant "still has a substantial and efficient remedy available").

concerning other responsible tortfeasors." The Estate also contended the 2004 amendments undercut the policy we recognized in *Parker Drilling Co. v. O'Neill* favoring workplace safety.[18]

Alaska USA responded that the Estate was raising a substantive due process challenge rather than a procedural due process challenge and that there was no substantive due process violation because a fair and substantial relationship existed between the 2004 amendments and a legitimate government purpose.[19] Alaska USA asserted the Estate had not met its burden, required in substantive due process challenges, of showing there was no rational basis for the law. It also argued that the Estate's inability to bring a wrongful death action "does not constitute a deprivation of property that would trigger a procedural due process analysis under the Takings Clause" because the Estate's claim accrued after the 2004 amendments. Alaska USA asked the court to notify the State that the Estate had challenged the 2004 amendments' constitutionality.[20]

The court provided notice to the State and gave it 60 days to intervene. After intervening, the State asked the court to determine that the 2004 amendments did not violate due process. The State agreed with Alaska USA's argument that the Estate had "no separate legal right to sue in tort because the legislature eliminated and replaced the wrongful death statute with the Workers' Compensation Act." Consequently, the State argued, there could be no procedural due process violation. The State maintained

---

[18] 674 P.2d 770, 775-76 (Alaska 1983) (affirming "that there is a common law duty to provide a safe worksite . . . . [and] protect[] all workers on the site" and that "[t]he duty is not dependent upon the existence of any particular combination of contractual relationships").

[19] *See Schiel*, 219 P.3d at 1034-36 (holding 2004 amendments did not violate equal protection and thus did not violate substantive due process).

[20] *See* Alaska R. Civ. P. 24.

that the amendments did not violate the Estate's substantive due process rights because the compensation, while limited to a "modest sum of burial costs," was rationally related to the purpose of the Act, identified as "to provide relatively quick compensation regardless of fault such that a person and her dependents will not be impoverished by a workplace injury."

Criterion raised arguments similar to those made by the State and Alaska USA about the Estate's due process rights. It additionally argued that Burke was not a "statutorily defined dependent" of the decedent and thus the Estate had suffered no pecuniary loss.

Alaska USA filed a cross-motion for summary judgment, asking the court to determine that it was a "project owner" as defined in the Act and thus protected by the exclusive liability provision. The Estate opposed, arguing that material factual disputes precluded summary judgment.

The court held argument on the summary judgment motions and denied the Estate's motion "for the reasons stated in the State's briefing." The court invited the parties to submit additional briefing addressing whether there were material factual disputes about the applicability of the 2004 amendments to both Criterion and Alaska USA. The Estate identified two possible factual disputes.

The court ultimately decided no material factual disputes existed and that both Alaska USA and Criterion "qualif[ied] as 'employers' under the statute as the project owner and general contractor, respectively." The court granted Alaska USA's cross-motion for summary judgment and "applie[d] the same reasoning to . . . Criterion." It dismissed the Estate's case and later entered final judgment against the Estate. The Estate appeals.

## III. STANDARD OF REVIEW

We review the grant of summary judgment de novo.[21] "We apply our independent judgment to questions of constitutional law as well as 'to questions of "statutory interpretation requiring the application and analysis of various canons of statutory construction." ' "[22]

## IV. DISCUSSION

In *Burke* we set out the general terms of the "grand bargain" underlying the workers' compensation system: Employees give up their right to sue in tort for work-related injuries and death in exchange for certain but limited compensation without regard to fault; employers give up the right to raise certain defenses in exchange for limited liability for work-related injuries.[23] This basic bargain is set out in AS 23.30.045 and .055. Alaska Statute 23.30.045 requires an employer to "secure the payment" of compensation under the Act, and AS 23.30.055 makes the compensation set out in section .045 the exclusive liability of an employer for a work-related injury or death.

In 2004 the legislature amended the Act, extending "up the chain of contracts" the mandate to secure payment of compensation for work injuries and expanding the exclusive liability provision to those contracting entities now potentially liable for payment of compensation.[24] Under the amendments a project owner is

---

[21]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

[22]     *Murphy v. Fairbanks North Star Borough*, 494 P.3d 556, 562 (Alaska 2021) (quoting *Burke v. Raven Elec., Inc.*, 420 P.3d 1196, 1202 (Alaska 2018)).

[23]     420 P.3d at 1202-03.

[24]     *See Lovely v. Baker Hughes, Inc.*, 459 P.3d 1162, 1169 (Alaska 2020) (emphasis omitted) (quoting Minutes, Sen. Labor & Commerce Comm., Hearing on S.B. 323, 23d Leg., 2d Sess., 20-21 (Mar. 4, 2004) (statement of Sen. Ralph Seekins, Sponsor

(continued...)

potentially liable for compensation for the work-related injuries of its contractor's and any subcontractor's employees and also is protected from tort liability for those work-related injuries if compensation is paid.[25]  In *Schiel* we considered the constitutionality of the amendments in the context of a personal injury suit against a contractor and held that the amendments did not violate the employee's equal protection or due process rights.[26]  We noted that, in response to questioning at oral argument before us, the contractor had "agreed . . . that at a certain level, inadequate benefits could violate a worker's due process rights."[27]  The Estate cited this footnote as the basis for its lawsuit against Criterion and Alaska USA, contending that the limited amount of funeral expenses paid under the Act coupled with the Estate's inability to sue others it considered liable for Caudle's death effectively left it with no compensation.

## A.    Procedural Due Process

We first consider whether the project owner amendments deprive the Estate of due process by denying it access to the court.  We previously have related the right of access to the court to procedural due process, recognizing in *Bush v. Reid* that a claim for personal injuries is a form of property subject to due process protection.[28]  The State argues that the project owner amendments had no effect on the Estate's procedural due process rights because the Estate had no property interest.  After observing that wrongful

---

[24]    (...continued)
of S.B. 323)).

[25]    AS 23.30.045, .055.

[26]    219 P.3d 1025, 1028-29, 1034-36 (Alaska 2009), *overruled on other grounds by Buntin v. Schlumberger Tech. Corp.*, 487 P.3d 595, 598 & n.4 (Alaska 2021).

[27]    *Id.* at 1036 n.63.

[28]    516 P.2d 1215, 1219 (Alaska 1973).

death actions are creatures of statute and did not exist at common law, and noting that the legislature can modify or eliminate unaccrued property interests that it has created, the State maintains that the legislature did precisely that with the 2004 amendments: it "abrogated [the Estate's] right to sue for workplace injuries and death." The State concludes that the Estate had no "property interest in a wrongful death suit to which procedural due process attaches."

But the legislature did not abrogate an employee's right to sue for workplace injuries and death when it enacted either the Alaska Workers' Compensation Act or the 2004 amendments to the Act. To the contrary, the Act explicitly permits lawsuits against uninsured employers[29] and any third party who may be liable for a compensable injury or death.[30] Rather than extinguishing an employee's right to bring suit, the Act's exclusive liability provision creates an affirmative defense that shields an employer complying with the Act from further liability. And when an employer does not comply with the Act, it loses not only the exclusive liability defense but also several other defenses that employers relied on before workers' compensation programs existed — the fellow-servant rule, assumption of risk, and contributory negligence of the employee.[31] Exclusive liability thus is one way to ensure compliance with the Act's

---

[29]     AS 23.30.055; *Seal v. Welty*, 477 P.3d 613, 618-19 (Alaska 2020) (observing that AS 23.30.055 allows suits against uninsured employers).

[30]     AS 23.30.015. An employee who recovers damages from a third party must reimburse the employer for any compensation received. AS 23.30.015(g).

[31]     AS 23.30.055; *see* 1 ARTHUR LARSON ET AL., LARSON'S WORKERS' COMPENSATION LAW § 2.03 (Matthew Bender, Rev. Ed. 2015) (describing limitations on employee's common law remedies through use of these three defenses); *cf. N.Y. Cent. R.R. Co. v. White*, 243 U.S. 188, 198-200 (1917) (discussing history of these three defenses).

grand bargain; employers who do not keep their end of the bargain lose common law defenses in addition to the Act's protection against limited damages.

Similarly, the project owner amendments did not abrogate an employee's right to bring a personal injury or wrongful death action; they instead expanded the applicability of both AS 23.30.045 and AS 23.30.055, extending the grand bargain to general contractors and project owners by redefining "employer" in those sections to encompass them in the statutorily defined chain of contracts with a direct employer.[32] The exclusive liability defense is now available to project owners and contractors when they or the direct employers comply with the grand bargain by securing compensation coverage. But the amendments did not extinguish an estate's right to bring a wrongful death action for a work-related death.

In arguing that the Estate's rights had been extinguished, the State relies on two takings cases. But we have distinguished property for purposes of due process protection from property for a takings analysis.[33] In *Vanek v. State, Board of Fisheries* we recognized that a commercial fishing permit may be property subject to due process protections but that it does "not necessarily follow that a [fishing] permit is property that requires just compensation when its value decreases due to a valid state regulation."[34]

---

[32]     Ch. 80, SLA 2004; *Lovely v. Baker Hughes, Inc.*, 459 P.3d 1162, 1169 (Alaska 2020).

[33]     *Vanek v. State, Bd. of Fisheries*, 193 P.3d 283, 289, 293 (Alaska 2008). The U.S. Supreme Court has also distinguished takings analysis from due process analysis. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 540-43 (2005).

[34]     193 P.3d at 293.

The question presented here is not unlike the one raised in *Arctic Structures, Inc. v. Wedmore*.[35] In *Wedmore* a subcontractor's injured employee sued companies that were not his direct employers but were involved in the construction project.[36] As in the appeal before us, a change in the law altered the defenses available in litigation stemming from a work injury: The companies argued they had been deprived of access to the courts "to raise the defense of the employer's negligence" because of the combination of several doctrines, including exclusive liability.[37] We rejected their procedural due process argument after first determining the companies had "not been deprived of any 'available' defenses."[38] In this context we said: "While it is manifest that no one has a vested right in any particular mode of procedure such that legislative change is prohibited, due process does require that a substantial and efficient remedy remains available or that one be provided when a preexisting defense is statutorily limited."[39] We recognized that rejecting the companies' argument might produce inequities because a direct employer whose negligence contributed to the harm would be protected by exclusive liability yet be reimbursed for compensation payments

---

[35]   605 P.2d 426 (Alaska 1979).

[36]   *Id.* at 427-28.

[37]   *Id.* at 435-37.

[38]   *Id.* at 437.

[39]   *Id.* at 436.

under a different section of the Act.[40] We nonetheless determined that the legislature and not this court needed to address the issue.[41]

The State questions the applicability of our *Wedmore* statement that due process requires "that a substantial and efficient remedy remain[] available or that one be provided."[42] Yet *New York Central Railroad Co. v. White*, the U.S. Supreme Court's 1917 decision upholding New York's workers' compensation statute against a constitutional challenge, acknowledged a similar concern.[43]  *White* involved a due process challenge to New York's workers' compensation law, including an argument that the statute deprived employers of due process by imposing liability without regard to fault.[44] The Court observed that it did not need to consider "whether the state could abolish all rights of action, on the one hand, or all defenses on the other, without setting up something adequate in their stead" because the workers' compensation system at issue "set[] aside one body of rules only to establish another system in its place."[45] The Court looked at the nature of the system as a whole to consider whether it was a "just settlement" of the problem the legislature sought to address in adopting a no-fault system of compensation with limited recovery for work-related injuries.[46] The Court expressly

---

[40] *See id.* at 438-40; *see also id.* at 441-42 (Boochever, C.J., dissenting) (setting out example of application and calling result of holding "glaringly inequitable").

[41] *Id.* at 440 (majority opinion).

[42] *Id.* at 436.

[43] 243 U.S. 188 (1917).

[44] *Id.* at 196.

[45] *Id.* at 201.

[46] *Id.* at 202.

left for future adjudication whether "the compensation prescribed by the statute in question is unreasonable in amount, either in general or in the particular case."[47]

Although decided many years ago, *White* has never been overruled. As reflected by our decisions and by federal law, whether and to what extent the constitution protects common law rights is not settled.[48] The U.S. Supreme Court has long held the view that "[n]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit."[49] But the Court has not decided whether due process places limits on the legislature's power to modify or eliminate common law rights, as demonstrated by the questions expressly left open in *White*.[50] In *Duke Power Co. v. Carolina Environmental Study Group, Inc.* the Court more recently said it was "not at all clear" that due process "requires that a legislatively enacted compensation

---

[47]    *Id.* at 205-06.

[48]    *See Fein v. Permanente Med. Grp.*, 474 U.S. 892, 894-85 (1985) (White, J., dissenting from dismissal of certiorari) (questioning whether due process requires compensation scheme with adequate remedy as quid pro quo "for the common-law or state-law remedy it replaces"); *Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1057 (Alaska 2002) (plurality opinion) ("Moreover, the damages caps do not violate the right of access because they are not so drastic so as to eliminate the tort remedies that they modify."); *cf. Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 391 (Alaska 2013) (explaining that *Fein* dissent noted constitutional protection of common law rights was unsettled and that federal cases considering challenges to Protection of Lawful Commerce in Arms Act interpreted it as limiting common law remedies, not "depriv[ing] injured persons of all potential remedies" (quoting *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 177 n.8 (D.C. Cir. 2008))).

[49]    *White*, 243 U.S. at 198 (citing *Munn v. Illinois*, 94 U.S. 113, 134 (1876)).

[50]    *Id.* at 201; *cf. PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 93-94 (1980) (Marshall, J., concurring) ("Quite serious constitutional questions might be raised if a legislature attempted to abolish certain categories of common-law rights in some general way.").

scheme either duplicate the recovery at common law or provide a reasonable substitute remedy."[51] The Court cited *White* and upheld the Price-Anderson Act, which provided limited compensation in the event of a nuclear accident, because that statute "provide[s] a reasonably just substitute for the common-law or state tort law remedies it replaces."[52]

We thus reject the State's contention that *Wedmore* introduced a court-access right into the workers' compensation framework "seemingly by error." Limits on the right to bring actions and assert defenses have been an underlying question in workers' compensation since its inception, and the balance of the benefits and burdens of the grand bargain remains an issue subject to our review. But *White* also shows that consideration of the entire system, not simply the result in one case, is important when evaluating changes to the workers' compensation scheme. Considering the Act as whole, we hold that the 2004 amendments do not violate the Estate's procedural due process rights because the remedy the Act provides, while small, is consistent with the purpose of workers' compensation and affords the Estate some remedy.

The purpose of the Act is to provide employees and their dependents adequate income to replace that lost through a work-related injury or death while encouraging a return to work.[53] We have previously recognized that the Act provides

---

[51]    438 U.S. 59, 88 (1978).

[52]    *Id.* at 64, 88 (citing *White*, 243 U.S. 188; *Crowell v. Benson*, 285 U.S. 22 (1932)).

[53]    *See Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1124-25 (Alaska 2017) (interpreting statute consistently with balancing goals of providing both adequate replacement income and incentive to return to work); *see also* AS 23.30.001(1) (requiring Act to "be interpreted so as to ensure the quick, efficient, fair, and predictable delivery of . . . benefits . . . at a reasonable cost"); *Burke v. Raven Elec., Inc.*, 420 P.3d 1196, 1202-03 (Alaska 2018) (summarizing purposes of workers' compensation).

uneven benefits.[54] Caudle had no dependents suffering economic loss by her death; providing funeral expenses as workers' compensation — thus eliminating the Estate's potential economic loss for Caudle's death — and allowing Criterion and Alaska USA to use exclusive liability as an affirmative defense does not deprive the Estate of all remedies or all possible access to courts. Caudle's family members may feel they have been wronged by a system that, in this particular case, provided minimal compensation, imposed only a small work-safety-violation fine, and offered no other means to hold accountable those whom the Estate considers responsible for her death. But considering the Act as a whole, extension of the exclusive remedy defense does not so diminish the Estate's economic recovery as to deprive it of all access to the courts.

## C.    Substantive Due Process

The Estate also raises a substantive due process challenge to the Act. Relying on the substantive due process goal we have identified — "guard[ing] against unfair, irrational, or arbitrary state conduct that 'shock[s] the universal sense of justice' "[55] — the Estate contends that the limited recovery available to it under the 2004 amendments fails to meet this substantive due process standard because the remedy available to it "is the exact definition" (emphasis omitted) of unfair and arbitrary state conduct.

Relying on our precedent, Alaska USA asserts that the Estate received a substantial remedy because Raven paid funeral expenses and that in a similar case we

---

[54]    *See C.J. v. State, Dep't of Corr.*, 151 P.3d 373, 381 (Alaska 2006) ("Workers whose wages are low, who have been the victims of blatantly negligent conduct, or who suffer exceptional noneconomic injuries bear the brunt of a system that may benefit their co-workers or employers but certainly does not benefit them.").

[55]    *Doe v. State, Dep't of Pub. Safety*, 444 P.3d 116, 125 (Alaska 2019) (second alteration in original) (quoting *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1130 (Alaska 1999)).

decided payment of funeral expenses as the sole workers' compensation remedy did not violate equal protection.[56] The State contends that the Estate's substantive due process claim is controlled by *Schiel*. The State acknowledges that the compensation afforded the Estate was "modest" and that "$10,000 in burial expenses is nowhere near proportionate to the loss of a life." But the State points out, as does Criterion, that the purpose of workers' compensation is not the same as that of tort law, even though the workers' compensation system replaces that system for many work-related injuries. Criterion also argues that the Estate failed to make the showing required under our test for substantive due process: A person challenging a statute on substantive due process grounds must show that the statute bears "no reasonable relationship to a legitimate governmental purpose."[57]

Our "inquiry into arbitrariness" starts with the presumption that the legislative action is proper, and the party challenging the statute on substantive due process grounds must "demonstrat[e] that no rational basis for the challenged legislation exists."[58] "If any conceivable legitimate public policy for the enactment is either apparent or offered by those defending the enactment, the party challenging it must disprove the factual basis for the justification."[59] In *Schiel* we identified the following legitimate purposes of the 2004 amendments: "to ensure or expand workers'

---

[56]     *Taylor v. Se.-Harrison W. Corp.*, 694 P.2d 1160, 1162-63 (Alaska 1985).

[57]     *Schiel v. Union Oil Co. of Cal.*, 219 P.3d 1025, 1036 (Alaska 2009) (quoting *Premera Blue Cross v. State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1124 (Alaska 2007)), *overruled on other grounds by Buntin v. Schlumberger Tech. Corp.*, 487 P.3d 595, 598 & n.4 (Alaska 2021).

[58]     *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974).

[59]     *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 352 (Alaska 1988).

compensation coverage for workers, to increase workplace safety, to prevent 'double dipping,' and to provide protection from tort liability to those who are potentially liable for securing workers' compensation coverage.'"[60]

To succeed on its claim the Estate was required to provide factual information that generally disproved the justifications for the amendments. The standard does not require that the legislation meet its stated goals or objectives in every individual case. For example, the Estate argues that the 2004 amendments did not fulfill their purpose of increasing workplace safety because safety violations, for which the State fined Raven, caused Caudle's death.[61] We recognize that work-safety violations contributed to her death, but Raven's failure to follow safety standards in this instance does not demonstrate that the legislature's expansion of the exclusive liability defense will not further workplace safety more generally. The Estate also argues that "double-dipping" was not an issue because of the minimal compensation the Estate received, but this argument does not address the overall costs of a business paying for both workers' compensation and (through indemnification agreements) tort damages for the same injury, which was the problem the legislature sought to address.[62]

The Estate's arguments misapprehend the heavy burden a party bears when challenging a statute on substantive due process grounds. The Estate did not and does not argue that the 2004 amendments' purposes were not legitimate, and it provided no evidence that would disprove the factual basis for the legislature's justifications. In addition to the stated purpose of enhancing workplace safety, the legislature enacted the amendments for the asserted purposes of increasing access to compensation coverage for

---

[60]     219 P.3d at 1032.

[61]     *Burke v. Raven Elec., Inc.*, 420 P.3d 1196, 1999 (Alaska 2018).

[62]     *Schiel*, 219 P.3d at 1032-33.

workers and preventing some employers or contractors from having to pay both compensation and damages because of indemnity agreements.[63]  In light of these purposes and the lack of evidence undercutting the legislative justifications for them, the Estate has not shown that the 2004 amendments violate substantive due process.

We again acknowledge that the result in this case will seem harsh to Caudle's family.  Some courts have expressed concern with similarly low levels of compensation for the estates of workers who die without dependents.[64]  As the Montana Supreme Court wrote:  "It is easy to opine that the Legislature could have done better in providing for family members after a worker's death, even those who are non-dependents of the worker.  Work-related death is traumatic, final, and adversely impacts a family forever."[65]  But we agree with that court that the appropriate amount of compensation is subject to debate and that the legislature could rationally decide to provide a minimal payment to the estates of employees who die without dependents while providing more to injured employees and the dependent survivors of employees who die in work-related accidents.[66]

---

[63]     *Id.*

[64]     *Walters v. Flathead Concrete Prods., Inc.*, 249 P.3d 913, 921 (Mont. 2011); *Park v. Rockwell Int'l Corp.*, 436 A.2d 1136, 1139 (N.H. 1981), *overruled by Alonzi v. Ne. Generation Servs. Co.*, 940 A.2d 1153, 1162-63 (N.H. 2008).

[65]     *Walters*, 249 P.3d at 921.

[66]     *Id.* at 921-22.

Considering the entire Act, including the 2004 amendments, we conclude, consistent with *Schiel*, that the Act does not violate the Estate's substantive due process rights.[67]

## V. CONCLUSION

We AFFIRM the superior court's judgment.

---

[67] We agree with the superior court that no material factual disputes precluded summary judgment.